## C. E. MUSE v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 16 December, 1908).

1. **Railroads—Rights of Way—Permissive User—Trespasser—Permissive Licensee.**

    The fact that a railroad company has permitted the public to use a part of its right-of-way as a street does not affect its right to use such part in the conduct of its business, and place lumber or other merchandise thereon in so doing; a person entering thereon, not upon matters relating to the company's business, is a permissive licensee.

2. **Railroads — Permissive Licensee — Contributory Negligence — Proximate Cause.**

    The defendant railroad had piled scantling along its right-of-way, and plaintiff, a permissive licensee, was injured by the defendant's locomotive striking a scantling while backing, and throwing it upon him. *Held,* that the jury, by finding, under a proper instruction, that by the exercise of the care required of an ordinarily prudent man, under the circumstances, the plaintiff should have perceived the probability of the occurrence, necessarily found that plaintiff's negligence was the proximate cause of the injury.

3. **Same—Concurrent Negligence.**

    A railroad company does not owe the same degree of care in preventing an injury to a permissive licensee as it does to its passengers, or employees in the discharge of their duties; and if a railroad company and the permissive licensee on its right-of-way are both negligent, and the latter is injured, and his negligence is concurrent with that of the railroad and continues up to the moment of the impact, the law attributes the injury to his negligence and not to that of the defendant.

4. **Instructions Asked—Substantially Given.**

    When the charge by the Court presents every phase of the controversy, with correct instructions as to the law, a new trial will not be awarded for failure to give the instructions asked, although they may involve correct·propositions of law.

ACTION tried before *Jones, J.,* and a jury, March Term, 1908, of SCOTLAND.

Plaintiff sues in two causes of action for recovery of damages sustained by personal injuries caused by the negligence

of defendant. The undisputed facts are, that the defendant's track runs through the town of Laurinburg, east and west, crossing, at right angles, Gill street and McLaurin avenue. Between these two streets, two side-tracks run off from the south side of the main line near Gill street, running nearly parallel with the main line in a westerly direction to, and across, McLaurin avenue. The side-track next the main line is known as the "Warehouse track," and next thereto as the "Oil Mill siding." The depot is west of McLaurin avenue. Between the depot, on the west, and Gill street, on the east, south of the main line, beginning at the depot and going east, are located the cotton platform, the lumber skids, a drum and a derrick used for loading lumber. These are on a strip of land about fifty feet wide and extending from Gill street to McLaurin avenue along the south side of the track. This strip of land was also used by the railroad, and its patrons, for storing lumber, cross ties, telegraph poles and other freight or railroad material. It is called "Railroad street" and, for many years, had been used as such by the public who passed over it in vehicles and on foot, with the knowledge and acquiescence of defendants, Seaboard and Carolina Central Railway Companies. It is a part of the right of way and has never been condemned or dedicated, but had been worked by the town authorities. On Sunday morning, 4 March, 1906, plaintiff went to the depot and was, at the time of sustaining the injury, standing on Railroad street, six or eight feet south of the siding, waiting for an engine backing down the siding to reach that point, for the purpose of talking to the engineer. The engine was backing to a train of freight cars down the siding. While he was standing in this position, some part of the train caught the end of a plank lying on the east side of a skid, at an angle of about thirty degrees, violently throwing it against plaintiff, inflicting serious injury. Plaintiff did not notice any lumber lying at the place, liable to come in contact with the car. "Railroad

street" was on defendant's right of way. The injury sustained, as described, constitutes plaintiff's first cause of action. After he was struck by the scantling, the train moved again, and while he was down he was again struck by a plank and injured, and this constitutes his second cause of action. The defendants denied that they were guilty of negligence, and pleaded contributory negligence on the part of plaintiff. The usual issues, raised by the pleadings, were submitted to the jury, who found, upon the first cause of action, that defendants were guilty of negligence and that plaintiff was guilty of contributory negligence. Upon the second cause of action, they found for the plaintiff, upon both issues, and assessed his damages at $3,800, for which judgment was signed. Plaintiff noted numerous exceptions to his Honor's rulings upon the issue of contributory negligence and, from a refusal to grant a new trial upon that issue, appealed.

*J. G. McCormick, McLean & McLean* and *Cox & Dunn* for plaintiff.

*Burwell & Cansler, Jno. D. Shaw* and *Gibson & Russell* for defendants.

CONNOR, J., after stating the case: Plaintiff concedes that "the only exceptions which require notice cluster around the question of contributory negligence." While it is conceded that the strip of land, upon which plaintiff was standing when he was injured, has been used by the public for many years, it is a part of defendants' right of way, and by permitting the use of it, as described, they lost none of their rights to use it for "railroad purposes." A railroad company owns its right of way as a necessary means of discharging its duty as a common carrier to the public, and cannot dispose of it, or, by permissive user, as a passway, confer any rights upon the public inconsistent with the purpose for which it has been acquired, by any of the methods known to the law or named in the charter. The right of way is dedicated to a public use.

It is for this reason protected against loss by adverse or per-
missive possession of its right of way.   Revisal, sec. 388;
*R. R. v. McCaskill,* 94 N. C., 746; *R. R. v. Olive,* 142 N. C.,
257.   The fact, therefore, that the defendants permitted the
public to use a portion of the right of way, and that it was
called "Railroad street," upon which plaintiff was standing
when injured, does not affect the defendants' right to place
the lumber on the right of way.   The defendants had a right
to place such structures, or obstructions, on it as were neces-
sary, or convenient, for the conduct of their business as a com-
mon carrier.   They also had a right to pile lumber, or other
material, on it, either for their own use or the use of their
patrons, and the officers and agents are the sole judges of such
necessity or convenience, subject, of course, to the police
power of the town, as any other property owner.   *Olive v.
R. R., supra,*   When, therefore, the plaintiff went upon the
right of way, as described by himself, he was at best but a per-
missive licensee, and the duty of the defendants to avoid injur-
ing him, and his own duty to avoid being injured, is measured
by the well settled rules of law in regard to persons occupy-
ing that relation..   He was not on the right of way for the
purpose of transacting any business with the defendants, or
their employees, within the scope of their employment.   We
have uniformly applied the principle fixing the relative
rights and duties of the company and persons going upon its
right of way, to cases coming before us.   The last case was
*Bailey v. R. R.,* at this term.   As illustrative of its applica-
tion in this case, our attention is called, in defendants' brief,
to a number of decisions of other Courts.

In *West Virginia R. R. Co. v. Fuller,* Md., 61 L. R. A.,
574, the plaintiff's intestate, a boy who, it was alleged, was
standing in a yard adjoining the right of way of the defend-
ant railway company, was killed as a result of a box car be-
ing negligently thrown from the railway track by reason of
a collision between two trains.   The Court held, that if the

boy was standing *off* the right of way he *might* be entitled to recover, but that if he was standing on the right of way, he was a *trespasser,* to whom the company owed no duty, except not to wilfully or wantonly injure him, and he would not be entitled to recover.

In *Manning v. R. R.* (W. Va.), 16 L. R. A., 271, the plaintiff's intestate, without express invitation, visited the telegraph office of the defendant, for the purpose of paying a friendly call to the operator; the office being located on the right of way. While in the office, one of the defendant's trains was derailed, on account of the negligence of its servant in leaving a switch open, and ran into the telegraph office and killed the plaintiff's intestate. The Court denied the right of the plaintiff to recover, on the ground that his intestate was a mere trespasser and the defendant owed him no duty other than not to wilfully injure him.

In *Poling v. R. R. Co.,* 24 L. R. A. (W. Va.), 215, plaintiff's intestate was standing on the defendant's right of way, within two steps of a public highway, and fifteen feet of a mail crane, for the purpose of watching the postal clerk catch the mail bag that had been suspended from the crane while the train was in motion. In some way, as the postal clerk undertook to make the catch, a sliver from the mail crane broke off and was hurled against the plaintiff's intestate, killing him.

In denying the right of the plaintiff to recover, the Court held that his intestate was a mere trespasser, or, at most, a permissive licensee, and the defendant therefore owed him no duty other than not to wilfully or wantonly injure him, and was consequently not legally responsible for his death; the Court saying: "He was there simply as a looker-on, to see the mail train go by and a mail agent make the flying catch of the mail pouch. Therefore, he was a mere trespasser or, at best, a voluntary licensee. The company made no change to endanger him after he came. It owed him no duty

that was violated. It was a case in which the unexpected happened and its liability to happen could not be foreseen, and is only proved by the actual happening."

In *Holland v. Sparks* (Ga.), 18 S. E., 990, plaintiff's intestate was walking along near the defendant's track, upon its right of way, when a freight train was derailed as a result of being negligently run too rapidly, and one of the cars struck plaintiff's intestate and killed him. In holding the plaintiff was not entitled to recover, the Court said: "In the present case it was insisted that the servants in charge of the defendant's freight train were running it at a high and dangerous rate of speed and that this conduct on their part amounted to negligence. Most probably it was a violation of the duty which these servants owed to the company and to those whose property was being transported by the train, and in this respect their conduct may have been negligent. But we do not think their failure to observe due care and diligence in running the train was negligence, as against one in no way connected therewith, and whose injury, by its rapid running and derailment was a consequence so remote as to require almost the gift of prophecy to anticipate it."

So, in the leading case of *Sweeny v. R. R.,* 10 Allen, 368, cited with approval in *Quantz v. R. R.,* 137 N. C., 139, the Court said: "So a licensee who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure."

In *Carr v. R. R. Co.* (Mo.), 92 S. W., 874, plaintiff, while walking along one of the defendant's railway tracks which

was habitually used by pedestrians, was injured by being struck by a brake-shoe which was thrown from a train running in the opposite direction on a parallel track, on account of the alleged negligence of the defendant in permitting the defective shoe to be upon its train.

In holding that the plaintiff, in no view of the law, was entitled to recover, the Court said: "The plaintiff was on the defendant's right of way, enjoying the privilege merely of a licensee in walking thereon, and the company owed him no other or greater duty than not to negligently or wantonly injure him. The evidence in no way shows that the injury was the result of negligence on the part of the company. . . . . If there is no evidence of wilful, reckless or wanton disregard of human life, on the part of the operatives of the train, there is nothing for the jury to pass upon, and the Court should sustain a demurrer to the evidence. The courts make a distinction between a person who comes upon railroad premises at the invitation of the railroad company, or for some purpose connected with its business, and a person who goes upon such premises for his own convenience or pleasure. In the one case there is a duty to protect the person thus going upon the property of another from injury, while on his premises; while as to the other there is no such duty." *Peterson v. R. R.,* 143 N. C., 265. In *Ray v. R. R.,* 141 N. C., 84, the plaintiff was a passenger and was injured by a backing train.

The question of contributory negligence was submitted to the jury. Upon the second issue his Honor instructed the jury, that "If they found by the greater weight of the evidence that the plaintiff, by the exercise of that care which an ordinarily prudent man would have exercised under similar circumstances, could have discovered that the said piece of scantling was lying so dangerously near the defendant's sidetrack as to make it probable that it would be struck by the

149—29

passing train and injure the plaintiff in the way he was in-
jured, in time to have avoided being so injured, then the
Court charges you that the plaintiff was guilty of contributory
negligence of the defendant in bringing about his injury, and
you will answer the second issue 'Yes.'" While it is by no
means clear that, in the light of the plaintiff's evidence, he
may not have told the jury to answer the first issue in the
negative, that question is not presented, and we do nôt decide
it. Certainly, however, when his Honor placed upon the
plaintiff the same standard to avoid being injured as he im-
posed upon the defendants to avoid injuring him, the plain-
tiff cannot complain. The defendants were using, in a
lawful way and for a lawful purpose, their right of way,
while plaintiff, in the most favorable view for him, was a
voluntary or permissive licensee. He had the same, if not
better, opportunity of seeing the physical conditions, by
which he was surrounded, as the defendants' employees.
There was no concealed danger. The pile of lumber and the
position of the plank or scantling was obvious. It is true that
he did not see or observe tha tthe plank was in a position to be
struck by the backing train, and it is also true that defendants'
employees did not see or observe it. Conceding that it was the
duty of one to do so, why was it not equally the duty of the
other? Why, as contended by plaintiff, were defendants guilty
of negligence in not seeing the position of the plank and he
relieved of all obligation to see, standing within two or three
feet of the pile, while defendants' employees were discharging
their duty on the moving train? . The jury found that both
should have done so, and by the exercise of reasonable care
could have prevented the accident. The negligence of both
continued up to the last moment, leaving no element of the
last clear chance in the case. In this condition of the record
it is manifest that the plaintiff cannot recover. The jury
having found, under his Honor's instructions, that the plain-
tiff in the exercise of the care of an ordinarily prudent man,

under similar circumstances, could have discovered that the piece of scantling was lying so dangerously near the track as to make it probable that it would be struck by a passing train and injure him in the way he was injured, in time to have avoided being so injured, no other conclusion could be reached than that his failure to get out of the danger from the train, which he knew was backing and for which he was waiting, was the proximate cause of the injury. Both parties are held to corelative duties, not necessarily or always the same, but regulated by the relation which they occupy in respect to the transaction or occurrence, by reason of which the injury is caused.

The owner of premises in their lawful use owes to a trespasser or permissive licensee a duty, the standard of which is fixed by law. The trespasser or licensee owes to himself, while on the premises, a duty also fixed by law. If, by reason of the failure of both to act up to the standard, the trespasser or licensee is injured and such failure is concurrent with and continues up to the moment of the impact, the law attributes the injury to his failure and not to that of the defendant, and does not permit a recovery. This is the basis upon which the doctrine of contributory negligence, which bars a recovery, is founded. This was the sole question involved in this case upon the second issue. His Honor properly defined the plaintiff's duty, and the jury found that he failed to act up to the standard.

Many of the numerous requests for instructions were calculated to confuse the real question and mislead the jury. We do not mean that they were so intended. In every case involving liability for alleged negligent conduct, either of commission or omission of duty, the decision may be simplified, and much confusing language eliminated, by keeping in mind the elemental truth that the real inquiry is whether there has, in the concrete case, been a breach of duty by either or both parties. This being answered, the sole remaining

inquiry is where the proximate cause of the conditions produced by such breach of duty is located. Usually the questions combine both law and fact, and the latter must be decided by the jury. In some exceptional cases, upon well settled principles, the question is one of law to be decided by the Court by instructions to the jury, or upon demurrer to the evidence. His Honor put the real question upon the second issue in its simplest form and, at the same time, comprehended every essential element involved.

Many of the exceptions have no relation to the question of contributory negligence and were properly refused. It is well settled, that when the charge given presents every phase of the controversy, with correct instructions as to the law, a new trial will not be awarded for failure to give instructions asked, although they may involve correct propositions of law. The instructions given bring the case within this rule.

We do not find any merit in the exceptions to the admission and rejection of testimony. His Honor properly exercised his discretion in denying the motion to set aside the verdict on account of the alleged misconduct of the jury. The wisdom of the well settled rule excluding evidence from the jurors tending to impeach their verdict, is illustrated in this case. Upon the whole evidence, the deplorable injury sustained by the plaintiff appears to have been one of those accidents which overtake men in life for which it is impossible to account, or to affix any moral or legal accountability. While the jury may well have found this to be so, they have reached the same result by fixing blame on both parties. This is one of the tendencies of the human mind, the other and more charitable being to attribute to unforeseen and uncontrollable causes many of the incidents of human life. The plaintiff recovered substantial damages on his second cause of action, and it would seem that the jury, within the latitude necessarily and perhaps wisely given them, have done sub-

stantial justice. . At least there is no error entitling either party to further prolong the litigation. The judgment must be

Affirmed.