T. C. EARNHARDT AND S. J. M. BROWN v. SOUTHERN
RAILWAY COMPANY.

(Filed 6 December, 1911.)

1. **Railroads—Rights of Way—North Carolina Railroad—Charter—Presumption of Grant—Developments—Interpretation of Statutes—Time.**

   According to its charter provisions the North Carolina Railroad Company could acquire a right of way for its railroad by condemnation proceedings, and section 29 was intended to provide for instances where these proceedings had not been instituted and evidence of the consent of the owners had been lost or could not be produced. The charter should be interpreted as of the time the Legislature granted it, and under the conditions then existing, and thus the provision therein that in the absence of a grant from the owner of the land, his right of action is barred if he fails to claim compensation within two years is valid, the statute raising a presumption of a grant of the land on which the road is located, together with a space of 100 feet on each side of the center of the track. *R. R. v. Olive*, 142 N. C., 273, cited and applied.

2. **Railroads—Rights of Way—Nonuser—North Carolina Railroad—Grant — Owners' Inactivity — Presumptions — Interpretation of Statutes.**

   When the owner of land over which the North Carolina Railroad has been run has remained inactive for a period of two years after its completion, a presumption of a grant from the owner arises for the land on which the road is located, and for the width of the right of way provided by the charter.

3. **Same—Owner's Improvements—Damages.**

   *Semble*, that as the presumption of a grant by the owner to the North Carolina Railroad does not arise except in the absence of a contract, when permanent structures erected by the owner within 100 feet of the main line are used for a long time without objection, in localities where it was customary to acquire rights of way by purchase, less in width than 100 feet, the statutory presumption would not arise, when no evidence of a contract was introduced by either party; and damages for permanent improvements on the right of way made in good faith may be recovered when the right of way is subsequently taken for the use of the railroad.

**4. Same—Rights of Railroad.**

When the North Carolina Railroad Company has acquired lands over which its road extends by reason of the presumption of a grant from the owner under the provisions of the statute, the subsequent use of an unoccupied part of the right of way by the owner, or those claiming under him, cannot affect the right of the company thereto from time to time as the development of its business demanded.

**5. Same—Decision of Railroad.**

It rests in the judgment of a railroad company to determine the necessity for the use of an unoccupied portion of its right of way in the development of its business. *R. R. v. Olive*, 142 N. C., 273, cited and applied.

**6. Lessor and Lessee — North Carolina Railroad — Southern Railway—Right of Way—Nonuser—Occupation of Owner—Rights of Lessee.**

The lease by the North Carolina Railroad Company to the Southern Railway Company of its road, franchise, and rights of property, to be operated by the latter, is a valid one; and as the North Carolina Railroad has, under its charter, the right to an unused part of its right of way for laying a double track in the development of its business, the same right extends to the Southern Railway Company under the lease.

APPEAL from *Lyon, J.,* at May Term, 1911, of ROWAN.

This is an action to recover the possession of a lot of land and damages for the wrongful entry thereon by the defendants.

The entry was made by the Southern Railway Company for the purpose of laying a double track.

It is not denied by the defendant that the plaintiffs are the owners of the land, subject to the easement and right of way of the North Carolina Railroad.

The land was originally a part of the Robards land, and the house now occupied by the plaintiffs has been built within six or seven years.

The plaintiff offered evidence tending to prove that, at the time of the entry, a dwelling-house was situate on said land about 55 feet from the center of the main line of the North Carolina Railroad Company; that in front of the house there is a yard, and between the yard and the railroad a roadway, and that by the entry of the Southern Railway to build the

double track there is an interference with a part of said road-way, leaving a walkway outside of the plaintiffs' yard. Also that plaintiffs and those under whom they claim have been in possession of the land for about seventy years.

There was also evidence that in 1850 or 1851 there was a house on the Robards land, but the witnesses do not state where the house was located, nor is there any evidence that the double track, as now constructed, would interfere with any dwelling or yard in existence in 1850 or 1851.

The evidence as to the house tends to prove that a blacksmith shop or some temporary structure was on the land and not a permanent house.

The defendant offered evidence tending to prove that on account of increased business a double track was necessary, and that the Southern Railway had so determined, and that in its construction the right of way in use did not approach the dwelling-house of the plaintiffs nearer than 25 feet, and that the yard was not interfered with. Also that there was no house within 100 feet of the main line in 1850 or 1851.

The North Carolina Railroad was completed about 1854.

Section 27 of its charter provides for the condemnation of a right of way, and at the end of said section there is the following proviso: *"Provided further,* that the right of condemnation herein granted shall not authorize the said company to invade the dwelling-house, yard, garden, or burial ground of any individual without his consent."

Section 29 of said charter is as follows:

"SECTION 29. That in the absence of any contract or contracts with said company, in relation to lands through which the said road or its branches may pass, signed by the owner thereof or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land upon which the said road or any of its branches may be constructed, together with the space of 100 feet on each side of the center of the said road, has been granted to the said company by the owner or owners thereof, and the said company shall have good right and title thereto, and shall have, hold, and enjoy the same as long as the same be used for the purposes of

said road, and no longer, unless the person or persons owning the said land at the time that part of the said road was finished, or those claiming under him, her or them, shall apply for an assessment of value of said lands, as hereinbefore directed, within two years next after that part of the said road which may be on said lands was finished; and in case the said owner or owners, or those claiming under him, her or them, shall not apply within two years after the said part was finished, he, she, or they shall be forever barred from recovering said land or having any assessment or compensation thereof: *Provided,* nothing herein contained shall forfeit the rights of *femes covert* or infants until two years after the removal of their respective disabilities."

No question is raised as to the proviso in section 29.

On 16 August, 1895, the North Carolina Railroad Company leased to the Southern Railway Company, for a term of ninety-nine years, its entire railroad, with all its franchises, rights of transportation, works and property, and said lease is now in force.

At the conclusion of the plaintiffs' evidence there was a motion to nonsuit, which was overruled, and after the introduction of evidence by the defendant the case was submitted to the jury, and pending its consideration his Honor granted the motion to nonsuit, and the plaintiffs excepted and appealed.

The plaintiffs' counsel contends in his brief:

(1) That there is evidence that a dwelling-house was situate on the land in controversy at the time of the construction of the North Carolina Railway, and, therefore, that said company could not acquire a right of way which would interfere with the house or yard.

(2) That if the North Carolina Railroad Company did not acquire a right of way, the Southern Railway Company has none, as it derives its powers and rights under its lease from the North Carolina Railroad Company.

(3) That if the North Carolina Railroad Company has a right of way, it is only to the extent that may be necessary to transact the business of the company, and does not include such

as may be needed by the business of the Southern Railway Company, much of which is the transportation of interstate passengers and freight.

(4) That laying the double track is an additional burden on the property of the plaintiffs, for which they are entitled to recover damages.

*George W. Garland for plaintiff.*
*Linn & Linn for defendant.*

ALLEN, J.   The first question to be settled is whether the North Carolina Railroad Company has acquired a right of way 100 feet wide on each side of its main track over the land in controversy, because if it has not done so, the Southern Railway Company, which derives its powers under a lease from the North Carolina Company, has no such right of way.

It must be remembered, in the consideration of this question, that there is no evidence that the double track, as now laid, invades any house or yard as it existed in 1850 to 1851, nor that it invades the dwelling or yard of the plaintiff.

Section 27 of the charter of the North Carolina Company relates wholly to the acquisition of a right of way by condemnation proceedings, and of course a right of way could be acquired by deed or contract from the owner.

By section 29 it is intended to provide for cases where there has been no condemnation proceeding, and evidence of the consent of the owner has been lost or cannot be produced, and it says that, in the absence of contract, there arises a presumption of a grant from the owner for the land on which the road is located, together with a space of 100 feet on each side of the center of the track, and if the owner fails to claim compensation for such right of way within two years after the road is finished over his land, he is barred.

Provisions like these cannot be construed in the light of conditions as they exist to-day, but as they were when the charters were granted.   As was well said by *Justice Connor,* in *R. R. v. Olive,* 142 N. C., 273 : "The point of view from which charters for railroads were drawn in this State fifty years ago must not be lost sight of in construing them in the light of present condi-

tions. If, to induce the investment of capital in the construction of railroads and development of the country, large privileges were conferred, not inconsistent with the exercise of the sovereign power of the State in controlling them, we may not construe them away without doing violence to sound principle and fair dealing. When these rights of way were granted, or statutes enacted permitting their acquisition in the exercise of the right of eminent domain, it was contemplated that they should be of sufficient width to enable the company to safely operate the road and protect the adjoining lands from fire communicated by sparks emitted by the engines. Land was cheap and population sparse. The railroads, as the charters show, were to be built by the citizens of the State, the capital stock to be subscribed by large numbers of people; Legislatures were ready to make broad concessions to these domestic corporations, and, as shown by the record in this and other cases in this Court, the owners of lands, because the 'benefits which will arise from the building of said railroads to the owners of the land over which the same may be constructed, will greatly exceed the loss which may be sustained by them,' were desirous to promote the building thereof, and to that end to give them rights of way over their lands. When the road has been constructed and the benefits enjoyed, although new and unexpected conditions have arisen, the rights granted may not be withdrawn, although the long-deferred assertion of their full extent may work hardship."

The effect of inaction on the part of the owner for a period of two years after the completion of the road has been considered in several cases in this Court, under charters similar to the one before us, and without difference of opinion, it has been held that under such circumstances, a presumption of a grant from the owner arises for the land on which the road is located and for the right of way provided for in the charter.

In *R. R. v. McCaskill,* 94 N. C., 751, *Chief Justice Smith,* discussing this question, says: "In whomsoever the estate was vested, there being no suggestion that they were under disabilities, it was, under the statute, as soon as the road was constructed, and *toties quoties* as it progressed towards conclusion, transferred to the corporation, of the required width of 100 feet

on either side, to be paid for as directed, when no written contract has been entered into for the purchase. In such case the inaction of the owner in enforcing his demand for compensation for land taken and appropriated after the finishing of the construction of the road thereon, for the space of two years thereafter, raises, under the statute, a presumption of a conveyance and of satisfaction, and hence becomes a bar to an assertion by legal process, of such claim. . . . The presumption of the conveyance arises from the company's act in taking possession and building the railway, when in the absence of a contract the owner fails to take steps, for two years after it has been completed, for recovering compensation. It springs out of these concurring facts, and is independent of inferences which a jury may draw from them. If the grant issued, it would not be more effective in passing the owner's title and estate. Thus vesting, it remains in the company as long as the road is operated, of the specific breadth, unaffected by the ordinary rules in reference to repelling presumptions."

This statement of the law, as modified by *R. R. v. Sturgeon*, 120 N. C., 225, has been approved in *R. R. v. Olive*, 142 N. C., 272; *Parks v. R. R.*, 143 N. C., 293; *R. R. v. New Bern*, 147 N. C., 168; *Muse v. R. R.*, 149 N. C., 446, and in other cases.

Speaking of the effect of the *Sturgeon case, Justice Connor* said in *Barker v. R. R.*, 137 N. C., 220: "It is there held that under similar conditions, construing the same language, the road acquired, not a title to the land, but an easement which entitles it to possession of the whole right of way only when it shall appear that it is necessary for its purposes in the conduct of its business. We do not understand that in any of the decisions of this Court the doctrine of *McCaskill's case* has been otherwise modified."

It will be noted that the presumption does not arise except in the absence of a contract, and it may be that where permanent structures have been erected by the owner of the land, within 100 feet of the main line, and have been used for a long time without objection, and also in localities where it is customary to acquire rights of way by purchase, less in width than 100 feet, that the presumption would not arise when neither party introduces any evidence that there was no contract.

It is also intimated in *McCaskill's case* and in *Gudger v. R. R.,* 106 N. C., 484, that there may be a recovery for permanent improvements, made without objection, and in good faith, in the event the right of way is taken for the use of the railroad.

These questions are not, however, before us on this appeal.

. It follows, therefore, that there is a presumption that the then owner of the land granted to the North Carolina Railroad a right of way over the land in controversy, and if so, the subsequent use of the land by the owner or by those who claim under him, as shown by the evidence in this case, could not affect the right. Rev., sec. 388; *R. R. v. McCaskill,* 94 N. C., 746; *Muse v. R. R.,* 149 N. C., 446.

It is also well settled that if the North Carolina Railroad acquired the right of way over the land, it was not required to use all of it, but could use such parts of it from time to time as the development of its business demanded.

In *Thomason v. R. R.,* 142 N. C., 322, the Court so holds, and it is there said: "It would seem that, upon the reason of the thing and from the nature of and the purpose for which the powers are granted, when the company acquired the right of way, in the absence of any restrictions, either in the charter or the grant, if one was made, it became invested with the power to use it, not only to the extent necessary to meet the then present demands, but such further demands as arose from the increase of its business and the proper discharge of its duty to the public. Any other construction of its charter, in this respect, would defeat the very purpose for which it was created—the growth and development of the resources of the country through which it was constructed. It would seriously interfere with railroads in the discharge of their duty to the public in a country the population and business of which are rapidly increasing, if because, to meet and encourage these conditions, they doubled their tracks, erected larger depots, made connections with branch lines, etc., new rights of action accrued against them in regard to the use of their right of way."

And it is also held that, "As the company is held accountable for the condition of its right of way, and may be compelled to build side-tracks and other structures necessary for the dis-

charge of its duties to the public, it must have the corelative right to be the judge of the necessity and extent of such use." *R. R. v. Olive, supra.*

If the North Carolina Company has the right of way over the land in controversy, and has the right to lay a double track thereon, the question remaining is, Can the Southern Railway Company do so?

The North Carolina Company has leased to the Southern Railway Company its road, franchises, and rights of property, and this lease is valid (*Hill v. R. R.,* 143 N. C., 539), and in passing on this same lease, *Chief Justice Clark* said in *McCullock v. R. R.,* 146 N. C., 317: "The Southern Railway Company, the defendant, as lessee of the North Carolina Railroad Company, is entitled to use said lot as fully as its lessor could have done (so far as this action is concerned), including any increased burden on the lot by reason of the increased business of said North Carolina Railroad Company's part of the business of the 'Southern,' whether the said business originates along the line of the North Carolina Railroad Company, or, originating elsewhere, is shipped to any point over the line of the North Carolina Railroad."

These authorities seem to answer the contentions of the plaintiffs, and to sustain fully the ruling of his Honor.

No error.