## E. M. HENDRIX v. SOUTHERN RAILWAY COMPANY.

### (Filed 16 April, 1913.)

**1. Pleadings—Interpretation—Demurrer.**

A demurrer to a complaint admits all of its allegations, and if any part of the complaint presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be gathered from it, under a liberal construction of its terms, the pleading will be sustained.

**2. Same—Railroads—Easements—Rights of Way—Unlawful Use.**

The grant by the owner of the lands in this action of a right of way to a railroad company thereon does not include the right of the latter to go upon the lands except for the necessary purposes of constructing and maintaining the road according to the right granted; and where a demurrer is filed by the company to a complaint alleging that the company had taken dirt from the plaintiff's lands to his damage, for the purpose of making fills along other portions of the road, the allegation states a good cause of action for damages to the land arising from an invasion of the plaintiff's rights, and the demurrer should be overruled.

**3. Railroads — Easements — Rights of Way—Increase of Widths— Prospective Use — Deeds and Conveyances—Interpretation of Deeds.**

Where a railroad company acquires from the owner a conveyance of a right of way for its road across his land, to so much thereof as may be occupied, etc., for the consideration of $1, reciting in the premises of the deed that it will materially add to the value of the lands along its lines, etc., the easement granted should not always be confined to the width of the right of way presently used, for it was in the contemplation of the parties that the business of the railroad would increase, and that changed conditions would require a greater width for the successful operation of increased traffic, for which the grantors would be compensated in the increased value of his land; and it is *Held*, that while the right of way of defendant is confined to the lands occupied for its tracks, banks, ditches, and works, not extending beyond the width provided for in its charter, it will not, in the proper exercise of this use, be liable in damages caused by widening its right of way and taking additional and necessary land, nor for damages caused by the elevating or lowering of its tracks or other necessary purposes, nor for the increased incon-

venience to the plaintiff and his family from smoke from the locomotive or from other matters necessary to the operation of its trains.

APPEAL by defendant from *Whedbee, J.,* at October Term, 1912, of GUILFORD.

This is an action to recover damages. The plaintiff alleges in his complaint:

1. That plaintiff is a citizen and resident of the county of Guilford, State of North Carolina.

2. That at the times hereinafter mentioned the defendant was and is now a corporation organized and existing under and by virtue of the laws of the State of Virginia, and owned, maintained, controlled, and operated within the State of North Carolina and elsewhere a system of railroads known as the Southern Railway, and was and is engaged in the business of a common carrier of passengers and freight.

3. That plaintiff was at the time hereinafter mentioned and is now the owner and in possession of a house and lot known as his home place, located in the city of Greensboro, county of Guilford, State of North Carolina, described as follows: Beginning at the southwest corner of the land of James Dick on and at the mouth of the lane separating said Dick from Mrs. Kerr, and runs thence north 289 feet with said Dick's line; thence west 146 feet with said Dick's to the center of the track of the railroad; thence south 15 degrees west 296 feet along said railroad to Hendrix Street; thence with the said Hendrix Street east 3 degrees south 200 feet to the beginning. (Recorded in Book 65, page 483.) That plaintiff acquired title to said lands under and by mesne conveyances from one Jesse H. Lindsay, under whom defendant also claims title to its alleged right of way, as hereinafter described.

4. That the Piedmont Railroad Company, a corporation organized and existing under and by virtue of the laws of the State of North Carolina, built, completed, and had in operation before the year 1865 a line of railroad from Danville, in the State of Virginia, to Greensboro, State of North Carolina, and its said railroad and right of way adjoined on the west the lands of plaintiff above described.

5. That the said Piedmont Railroad Company acquired its title to that part of its right of way for said road adjoining plaintiff's lands, as above described, by deed 7 April, 1862, from Jesse H. Lindsey, above mentioned in the third paragraph of this complaint, to said railroad company, and same is recorded in the office of the Register of Deeds of Guilford County, State aforesaid, in Book 38, page 704, which said record is hereby referred to and asked to be taken as a part of this complaint.

6. That after execution and delivery of said deed as aforesaid and under the authority therein given, the said Piedmont Railroad Company, prior to the year 1865, entered upon the lands in said deed described and located its right of way, constructed its roadbed and side ditches thereon. That as plaintiff is informed and believes, that part of said roadbed and side ditches adjacent to plaintiff's property was in a cut from 5 to 10 feet deep and from 40 to 45 feet wide at the bottom, and from 50 to 55 feet at the top, made by the said Piedmont Railroad Company, and those claiming under it,. including the defendant, continued to use said roadbed and ditches in substantially the same condition and to the same extent as its right of way and roadbed for said railroad up to the ..... day of June, 1909, a short time prior to the institution of this action, and in so doing said company exercised its right of election of the location and extent of its right of way at the place in question, and those claiming under said railroad company are estopped thereby from changing or widening said right of way.

7. That the defendant was at the times hereinafter mentioned and is now in the possession of the right of way of the said Piedmont Railroad Company adjacent to plaintiff's land, as above described, and was operating its trains along and over the same, and at said times claimed, and claims now, to be the owner of the same under and as successor to the said Piedmont Railroad Company.

8. That the plaintiff's land adjoins the right of way in question on the east, extending along the same north a distance of about 290 feet, and extends east therefrom about 290 feet to a line running nearly parallel with said right of way, and fronts on Hen-

drix Street. That plaintiff's dwelling, outhouses, and garden are located on the eastern part of said lot, leaving a vacant lot between that part of said lot occupied as aforesaid and the top of the cut, which is the eastern line of defendant's right of way, of about 80 feet fronting on said Hendrix Street and 290 feet deep, which was sufficient in size to locate a dwelling upon and was a valuable piece of property.

9. That on ...... day of June, 1909, the defendant wrongfully lowered its roadbed and track along and adjacent to plaintiff's property about 17 feet, and wrongfully and unlawfully entered upon and took possession of a strip of plaintiff's vacant lot above described, about 45 feet wide, extending along said right of way from Hendrix Street to the northern line of said lot, a distance of about 290 feet, and removed the dirt therefrom to a depth of from 10 to 12 feet, and is now in possession of same as a part of its railroad line.

10. That the taking of plaintiff's land as aforesaid was not necessary for the defendant's lowering its roadbed or double tracking same, as the land occupied by defendant as its roadbed and right of way before taking the strip of the plaintiff's land above mentioned was amply sufficient to have enabled it to have lowered its roadbed and double tracked same, if it decided so to do; and plaintiff alleges that defendant entered upon and took said strip of plaintiff's land as aforesaid for the sole reason that it needed dirt to make fills along its alleged right of way one-half mile or more from plaintiff's land, and for this reason defendant took said land, removed the dirt as aforesaid, and used same in making said fills as aforesaid.

11. That as plaintiff is informed and believes, there were more than 6,000 cubic yards of the dirt wrongfully taken by the defendant from the plaintiff's vacant lot as aforesaid, and same was reasonably worth the sum of 35 cents per cubic yard.

12. That defendant operates along and over its track and roadbed a large number of trains daily, and that prior to the taking of plaintiff's land and lowering its roadbed as aforesaid, the smoke and soot from defendant's engines usually passed over plaintiff's residence, but since the lowering of said track a large part of the smoke and soot therefrom passes into the

HENDRIX *v.* R. R.

plaintiff's dwelling and porches, which annoy and trouble the plaintiff and his family, and also depreciates the value of said place as a residence.

13. That prior to the taking of plaintiff's property intersecting with Church Street, crossing said railroad track at grade, and at the point of said crossing the defendant lowered its said track about 17 feet, thereby making it necessary and the duty of defendant to erect a bridge at said Hendrix Street across said railroad track. That in constructing the same defendant has negligently and wrongfully made abutments for the approaches to said bridge several feet higher than was necessary, by reason whereof the eastern approach to said bridge will have to be built so high that it will leave the remaining portion of plaintiff's vacant lot several feet below the grade of said street, which detracts from the appearance of the plaintiff's property and makes it inaccessible, and has thereby damaged same.

14. That by reason of the defendant's having taken strip of plaintiff's vacant lot, as hereinbefore stated, it has destroyed the value of the remainder of said lot, as the remaining part thereof is too small for a building lot.

15. That by reason of the wrongful acts of defendant, as hereinbefore alleged, plaintiff has been damaged to the amount of $2,000.

Wherefore plaintiff prays for judgment against the defendant for $2,000 and costs, to be taxed by the clerk.

DEED FOR RIGHT OF WAY TO PIEDMONT RAILROAD.

Whereas the construction of the Piedmont Railroad will be of great importance to the district of country through which it will pass, and will, it is believed, add materially to the value of the lands along the line which may be adopted for the same, and the undersigned are anxious, as far as possible, to induce the construction of the work through their respective lands:

Be it, therefore, known and declared by these presents that we whose names are hereunto subscribed, for and in consideration of the premises, and also of $1 to each of us in hand paid by the Piedmont Railroad Company, the receipt of which is

hereby acknowledged, do hereby grant, bargain, sell, and convey to the said Piedmont Railroad Company all right, title, and claim to so much of our land as may be occupied by the said railroad, its banks, ditches, and works; and we do furthermore hereby release all claims for damages, whether on account of increased fencing or otherwise, which may be occasioned by the passage of the said railroad through our respective lands, provided that the said Piedmont Railroad be located on a route having one of its termini at Danville and the other of its termini at Greensboro.

The defendant demurred as follows:

1. For that it appears upon the face of the complaint that the defendant, under deed to the Piedmont Railroad Company, under whom it claims and derives its title from those under whom the plaintiff claims and derived his title, had a legal right to enter upon and take possession of the land involved in this action for the purpose for which it was taken, held, and used.

2. For that it appears upon the face of the complaint that the smoke and soot which the plaintiff complains of were caused by the ordinary operations of trains over the defendant's road, and the defendant being a common carrier, authorized by law to carry on the business of a common carrier, and it being its duty in the conduct of such business to operate trains over its road, it is not liable for damages resulting from the lawful performance of that duty.

3. For that it appears upon the face of the complaint that under the deed from those under whom the plaintiff claims to the Piedmont Railroad Company, under which the defendant claims, the defendant had a legal right to place the abutments of the bridge so as to leave the plaintiff's lot in the condition alleged in the complaint.

The demurrer was overruled, and the defendant excepted and appealed.

*T. J. Shaw and Justice & Broadhurst for plaintiff.*
*Wilson & Ferguson for defendant.*

ALLEN, J.  The demurrer admits all of the allegations made by the plaintiff, and if any part of the complaint presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be gathered from it, under a liberal construction of its terms, the pleading will be sustained. *Brewer v. Wynne,* 154 N. C., 471.

Under this rule, it is admitted that the defendant has entered upon the land in controversy and has removed 6,000 cubic yards of dirt, when it was not necessary to do so in the use of the right of way, and for the sole purpose of filling at other places, which is an invasion of the rights of the plaintiff, although it be conceded that the defendant is right in its contention as to the construction of the deed for the right of way, and we are, therefore, of opinion the demurrer was properly overruled.

This disposes of the appeal; but the question as to the rights of the defendant under the deed, which is made a part of the complaint, has been fully discussed, and as it will necessarily arise on the trial, we will consider it.

The plaintiff contends that the right of way acquired by the defendant under the deed extends no further than the land actually occupied for railroad purposes, for its banks, ditches, and works, as located soon after the execution of the deed, while the defendant contends that it is of the width provided for in the charter of the Piedmont Railroad Company.

The deed is signed by twenty-six landowners.  It recites that the construction of the road "will be of great importance to the district of country through which it will pass, and will, it is believed, add materially to the value of the lands"; that the grantors are "anxious, as far as possible, to induce the construction of the work through their respective lands," and it conveys "all right, title, and claim to so much of our land as may be occupied by the said railroad, its banks, ditches, and works."

The parties to the deed were dealing with the future, and instead of desiring conditions to remain as they were, they hoped for greater development, and conveyed so much of the land "as may be occupied," etc.

It was within the contemplation and expectation of the parties that the business of the railroad would increase, and that it would require more land for its operations, and while the grantors might thereafter have to surrender some additional land for this purpose, they would be compensated for the loss in the increased value of the adjoining lands.

The question involved in *R. R. v. Olive,* 142 N. C., 257, is similar to the one before us. In that case the deed to the railroad company conveyed a right of way, but did not specify any particular width. It conveyed only so much of the grantor's land as the railroad company, under its charter and amendments, would have a right to condemn, and upon examination of its charter it was found that that charter did not specify any particular width, but gave the railroad company the right to condemn land for its right of way and all other purposes of the company. In construing that deed, this Court used the following language:

"If we hold that a right of way of the width necessary to carry into effect the purposes of the company was granted, we are confronted with the question whether the words 'purposes of the company' must be confined to the purposes which existed at that time, and that its power to enter and occupy was exhausted when the road was constructed. This construction would, in the light of what we know to be the purpose of constructing a railroad, be entirely too narrow. It would confine the company to the soil actually covered by its cross-ties and rails, with the drains on either side. When we examine the charters of other railroads granted by the Legislature from 1833 to 1860, we find that when the width of the right of way is fixed, it is usually 100 feet from the center of the track. Revised Code, ch. 61, entitled 'Internal Improvements,' confers upon all railroad companies the power to condemn land of the width of 'not less than 80 feet and not more than 100 feet.' It would seem that in the absence of any limit in the charter, the Chatham Railroad Company, by the general public law referred to and the express grant of all 'privileges, rights, etc., of corporate bodies in the State,' had 'the right to condemn' to the extent of 100 feet; and thus we find a standard by which to

measure the right granted by the deed of May, 1862. Unless we can, in this way, give effect to the deed by rendering the description of the easement certain, we would be compelled to hold it invalid. The maxim, *ut res magis valeat quam pereat,* admonishes us that it is our duty to uphold the deed if by reasonable construction it can be done. We think that the words, 'so much as the said road would have the right to condemn,' carry the right of way to the extent of 100 feet, which would be fixed by adopting the center of the track as the point from which the measurement should be made, extending 50 feet on each side."

The language quoted in *Earnhardt v. R. R.,* 157 N. C., 362, from the *Olive case,* as to the construction of charters granted about the time of the charter to the Piedmont Company, is pertinent to the construction of a deed executed for the same general purpose: "The point of view from which charters for railroads were drawn in this State fifty years ago must not be lost sight of in construing them in the light of present conditions. If, to induce the investment of capital in the construction of railroads and development of the country, large privileges were conferred, not inconsistent with the exercise of the sovereign power of the State in controlling them, we may not construe them away without doing violence to sound principle and fair dealing. When these rights of way were granted, or statutes enacted permitting their acquisition in the exercise of the right of eminent domain, it was contemplated that they should be of sufficient width to enable the company to safely operate the road and protect the adjoining lands from fire communicated by sparks emitted by the engines. Land was cheap and population sparse. The railroads, as the charters show, were to be built by the citizens of the State, the capital stock to be subscribed by large numbers of people; Legislatures were ready to make broad concessions to these domestic corporations, and, as shown by the record in this and other cases in this Court, the owners of lands, because 'the benefits which will arise from the building of said railroads to the owners of the land over which the same may be constructed will greatly ex-

ceed the loss which may be sustained by them,' were desirous to promote the building thereof, and to that end to give them rights of way over their lands. When the road has been constructed and the benefits enjoyed, although new and unexpected conditions have arisen, the rights granted may not be withdrawn, although the long deferred assertion of their full extent may work hardship."

The same rule of construction was applied in *New Bern v. R. R.,* 159 N. C., 543, to a contract entered into in 1856, by which the railroad agreed to grade Hancock Street and to keep and preserve it in good order, and a mandatory injunction was there sustained commanding the defendant to pave the street, the Court saying, among other things: "This obligation is not to be measured by the size and condition of the city at the time when the contract was entered into. The increase of population and the consequent growth of the city must necessarily have been within the purview of the parties at the time the contract was made."

We are, therefore, of opinion that by correct interpretation of the language in the deed the right of way of the defendant is confined to the land occupied for its tracks, banks, ditches, and works, but that such occupation is not to be determined by the needs of the defendant at the time of the execution of the deed, and may be extended from time to time, when necessary to meet the growing demands upon the defendant, and for the development of its business, not to exceed, however, the width of the right of way provided in its charter.

If the defendant exceeds the right conferred as herein declared, the plaintiff may recover the damages directly caused thereby, but the defendant is not liable for damages incident to the lawful exercise of its right.

Affirmed.