C. M. BELL and R. H. BERRY, Ex'rs of B. C. BELL, v. THE NOR-
FOLK SOUTHERN RAILROAD COMPANY.

*Damages—Condemning Land—Eminent Domain.*

Where a railroad company in constructing its road crossed the "lead
ditch" of an adjacent tract, and in consequence of the erection
of its necessary embankments and cutting of side ditches, the
lead ditch was unable to carry away the excess of surface water,
which overflowed the adjacent lands, and it appeared that the
land so used had been properly condemned and damages paid to
the owner; *Held,* that the company was not liable for the dam-
ages thus produced.

This is a CIVIL ACTION, commenced by the testator of
plaintiffs, to recover damages alleged to have been caused
by the flooding of his land by the act of the defendant
company in constructing its road bed, tried before *Mont-
gomery, J.,* at Spring Term, 1888, of CURRITUCK Superior
Court.

By consent, the issue: " What damage has the plaintiffs
sustained?" was submitted to a jury, and as to all other
issues and facts a jury trial was waived, and it was agreed
that they might be passed upon by the Court.

The response to the issue submitted to the jury was
" $700," and the Court found the following facts, to-wit:

The plaintiffs' testator owned the land and lead ditch
described in the complaint. The defendant in locating and
constructing its road bed, cut across said ditch and also cut
ditches by the side of its road bed to get dirt for the road
bed, and also to drain the road bed. In constructing its
road bed the defendant cut across the embankment or dirt
on the side of the lead ditch. By means of the locating
and constructing of said road bed more water was drained
into plaintiffs' ditch than it could carry off, and the plain-
tiffs' land was flooded and injured thereby. The water thus
carried by the defendant's ditches was surface water, except

occasionally after heavy rains the water from the Dismal
Swamp would spread out over the surface from the ditch.
There was no natural or artificial drain for these waters.

The "lead ditch" was sufficient to drain plaintiffs' land
till defendant constructed its road.

The lands of plaintiffs' testator, over which the defendant
constructed its road bed and ditches, and also a section or
part of the lead ditch had been condemned by regular pro-
ceedings under the statute and damages for the land taken,
and the legal incidental damages to the lands not taken had
been assessed and paid to him by the defendant.

The defendant did not locate and construct its road bed
or dig any ditch outside or off the lands which had been
condemned and paid for.

The ditches cut by defendant were necessary for the pur-
pose of the road bed, for the road and for the safety of travel
over the road, and the road bed could not have been drained
in any other way.

The plaintiff could have obviated the difficulty or relieved
his land of this increased volume of water, drained into his
lead ditch, by cutting the same deeper.

The plaintiff, upon the above facts and issue, moved for
judgment for $700.00 and costs.

The Court refused the motion, and upon defendant's mo-
tion, granted judgment for defendant. The plaintiffs ex-
cepted, and from the rulings and judgment appealed.

*Mr. E. F. Aydlett*, for the plaintiff.

*Mr. L. D. Starke*, and *Messrs. Pruden & Vann*, by brief, for
the defendant.

DAVIS, J., (after stating the case.) There is no error. It
is found as a fact that the ditches, of which the plaintiffs
complain, were necessary for the purposes of the road bed;
that the road bed could not have been drained in any other

way, and they were not outside or off of the land which had been condemned and paid for by the defendant, including "the legal incidental damages to the land not taken."

Every one has the right properly to use his own, and without this drainage for the surface water, the defendant's right of way, for which the plaintiff had been paid, would have been of no value, and if, as an incidental consequence of the lawful and rightful use of its easement by the defendant company, the surface water, damages the land of the plaintiffs' testator it is *damnum absque injuria,* and for which he cannot recover as for a tort. *R. & A. Air Line Railroad* v. *Wicker* and others, 74 N. C., 220.

It is no infringement of the maxim, "*Sic utere tuo ut alienum non laedas.*" Washburn's Easements and Servitude, 453.

It was said in *Willey* v. *R. R.*, 98 N. C., 263, speaking of the condemnation of the right of way: "Everything necessary and incident, to the original making and subsequent operating the road, must be intended to have passed as against the owner of the condemned land," and the right to cut such ditches on the condemned land as will protect the road bed against accumulating surface water is a necessary incident.

The water drained by the defendant's ditches was all surface water, except occasionally, after heavy rains, the water from the Dismal Swamp would spread over the surface of the ditch. There was no natural or artificial drain to the Dismal Swamp and the ditches were not designed to drain it, and the overflow was none the less of surface water, which, we apprehend, could not have been caused or prevented by the ditches. In *R. R.* v. *Wicker, supra,* a distinction is taken between diverting or obstructing a natural or artificial drainway, and one by which surface water is drained.

In the latter, in measuring the compensation to the landowner, the resulting damage should be estimated, and this

was one of "the legal incidental damages," which has been assessed and paid for as found by the Court.

In the former, it is the duty of the company, in constructing its road bed, to provide for the discharge of the waters through its ascertained drainway, whether natural or artificial.                                                     Affirmed.