PARKS v. RAILROAD.

(Filed December 11, 1906).

*Railroads — Right-of-way — Acquisition by Occupation — Rights Acquired—Surface Water—Drains—Permanent Damages—Issues.*

1. The defendant, by entering upon and occupying plaintiff's land for railroad purposes, acquired, at the end of two years from the construction of the road, an easement permitting it to use one hundred feet from the center on either side for railroad purposes, to the same extent as if condemned, which includes the right to construct the road-bed and to carry from it by the use of drains, carefully constructed, the surface water accumulating on the right-of-way.

2. In exercising this right, care must be taken to avoid, by the use of all reasonable means, all unnecessary damage to the lands over which it has a right-of-way.

3. In an action for damages for the negligent construction of a drain by a railroad, the issues should be so framed that the plaintiff recovers damages up to the time of the trial, not exceeding five years, and for the permanent easement which is acquired by the payment of the judgment.

ACTION by C. L. Parks against Southern Railway Company, heard by *Judge W. B. Councill* and a jury, at the June Special Term, 1906, of the Superior Court of WILKES.

This action was brought for the recovery of damages alleged to have been sustained by the negligent construction of a drain or culvert, called in the pleadings and testimony a "trunk," under defendant's road-bed, whereby the plaintiff's land is washed, overflowed and injured. The pleadings and undisputed testimony show that plaintiff was at the time of the construction of the railroad and has at all times since been the owner of a tract of land containing ninety acres, on one side of which is a hill and the other side lying on the north bank of the Yadkin River. That some sixteen years ago the

Northwestern North Carolina Railroad Company entered upon said land and constructed its road-bed and track through said land. No right-of-way was granted or condemned over the land nor has any proceeding for condemnation or compensation been instituted by the plaintiff. The said railroad is now the property of defendant corporation.

The plaintiff describes the manner in which his land is affected by the construction of the road as follows: "The land lying north of the railroad is upland and a large hillside, eight acres in all, which drains through to this trunk; all open land. My land on the south side of the railroad is lower than on the north side. The point where the trunk runs is 150 yards from the river. When it rains the water accumulates from the land above and runs down and on through the trunk, taking earth, and when the water gets below the trunk it spreads out over the land and distributes the dirt, etc. There is no other way for the water to go except through this trunk. Some two hundred yards from the trunk is a branch which passes under the track of the road. The branch is lower than the trunk. * * * The water accumulates in the side ditches of the railroad as it flows down from the hill above and is thereby carried to the trunk, and the water goes through the trunk and spreads out over my land. * * * When the road was first built there was a wooden trunk through which the water flowed, and this rotted out, and another and larger one of pipe was put in. The water goes through this pipe with greater force than formerly. * * * There is no more water that goes on this land through the trunk than would have gone over it if there had been no railroad. The only difference is that, instead of spreading out over the entire six acres, it is collected in the side ditches of the road and then cast in a body through the trunk. The drainway is about the lowest point and is a place where the water would naturally flow to."

Bud Parks, the brother of plaintiff, says that he knows the land; that it is hill land, north of the road, several acres of it. Some of it is pasture land. The natural flow of the water from the north hill land would be to and over the land lying to the south. It would be distributed but for the railroad. The water is collected in the side ditches and as collected goes through the trunk.

The testimony in regard to the damage is very conflicting. His Honor submitted the following issue: "Did defendant damage plaintiff's land as alleged in the complaint?" There was an issue directed to the amount of the damage.

The defendant requested his Honor to instruct the jury that upon all the evidence they should answer the issue "No." This was declined, and defendant excepted. His Honor instructed the jury upon the first issue that although no more water went on plaintiff's land since the construction of the road than before, still if it so constructed its road as to permit the water passing along the natural drainage and flow, but so as to collect in its side ditches the water coming from the water-shed above, and which would have naturally flowed upon the six acres of land, and conveyed this water in its side ditches to the trunk, and it there became concentrated and permitted to go through the trunk onto plaintiff's land, and carry with it dirt and other matter, such water and dirt and other matter being distributed over plaintiff's land, defendant having furnished no sufficient and proper drain beyond the trunk to take water away, and on to the river at lower part of plaintiff's land, then the jury would answer the first issue "Yes," if they find that thereby plaintiff's land was damaged. To which defendant excepted.

There was judgment upon the verdict, and defendant appealed.

*Finley & Henderson* for the plaintiff.
*Manly & Henderson* for the defendant.

CONNOR, J., after stating the case: The plaintiff's land forms a water-shed to the Yadkin River. Prior to the construction of the railroad the water found its way down the hillside, spreading over the bottom-land and either percolated through the soil or passed over the surface into the river. It was necessary in the construction of the railroad to make a road-bed of the usual width, which operated as a barrier, or dam, to the natural flow of the water. Coming down the hill, unless carried off by side ditches, the water percolated through the road-bed, endangering the solidity of the track. To avoid this danger, the company cut a side ditch, into which the water flowed. finding its way to the lowest point along the north side of the road-bed. At this point it ponded, rendering it necessary to provide an outlet to the river. For this purpose the company, at the time of constructing the road, put in the road-bed, under the track, a wooden trunk or drain. This was done some sixteen years ago. During the year 1899, as alleged in the complaint, this drain was enlarged and a pipe inserted through the road-bed. This pipe was, we assume, no longer than the width of the road-bed at its base, thus throwing the water from its mouth onto plaintiff's lower lands. It does not appear whether the wash was on the right-of-way or beyond it. We assume that it was on the plaintiff's land over which defendant had acquired an easement, by virtue of the provision of its charter, after two years from the construction of the road. The water passing through the culvert was surface, or such as fell, when it rained, upon the water-shed above the track. There is no evidence that the company diverted any water from a natural water-course.

It is conceded that the defendant has not increased the flow of surface water, that is, that no more surface water went through the culvert than formerly passed over plaintiff's land, either before the road was built or with the under-drain. The plaintiff does not complain of the construction of the road-bed

and track through his land or the manner in which the side ditches are constructed.

It is well settled that for the entry upon and taking his land "for railroad purposes, he should have sued within two years from the construction, and that by his failure to do so it shall be presumed that the land upon which the road may be constructed, together with one hundred feet on each side of the center of the road, has been granted to the company by the owner, and it acquired a good right and title to the same, so long as the land may be used only for the purpose of the road, and no longer." *Barker v. Railroad,* 137 N. C., 214; *McCaskill's case,* 94 N. C., 746; *Railroad v. Olive,* 142 N. C., 257.

The defendant insists that the right, with the accompanying easements, thus acquired by the company are the same in all respects as if the land had been condemned or granted for railroad purposes. An examination of the decisions of this Court does not show that this question has been heretofore directly presented or decided. In the cases involving the rights and duties of railroad companies, in respect to their rights-of-way, no distinction has been suggested or made between the several methods of acquisition. In *McCaskill's case,* which was the first of a series found in our Reports, the right was acquired under the statutory presumption arising after two years' occupation, and the right was treated as coextensive with a condemnation or grant. In *Brinkley v. Railroad,* 135 N. C., 654, the question was presented whether, upon a right acquired in this way, the company could, without being liable to the owner, change the grade and relocate its track on the right-of-way. *Montgomery, J.,* discussing the question, cited *Blue v. Railroad,* 117 N. C., 644; *Railroad v. Sturgeon,* 120 N. C., 225, and *Shields v. Railroad,* 129 N. C., 1, and says: "In these cases it was decided that railroad companies, if they should need the whole of the right-of-way

for railroad purposes, had the right to the use of the whole. Some of these uses were mentioned in the decisions, viz., road-bed and drains, sidetracks and houses for their employees, warehouses, etc." The Court held that the company was not liable for making a change in the grade, etc. In *Sturgeon's case, supra,* it is said: "What reasonable meaning can be attached to the words "for the purposes of the company," except that the land should be used for such purposes as are conducive and necessary to the conducting of the business of the company, that is, of safely and rapidly transporting and conveying passengers and freight over its railroads? · That is the whole business of the company. They need land for no other purpose than to properly construct their road-beds and drain them, build sidetracks, etc." *Fleming v. Railroad Co.,* 115 N. C., 676.

It would seem, in the light of what has been said by this Court, as well as upon the reason of the thing, that when the land-owner acquiesces for two years after the construction of the road over his land, with full knowledge of his legal rights and of the extent of the rights accruing to the company by such occupancy, he assents to the acquisition of the easement in the same manner and to the same extent as if the land had been condemned. We would find it exceedingly difficult, if not impracticable, to draw any line of distinction between the rights acquired by the different methods prescribed by the law. As we held in *Hodges v. Telegraph Co.,* 133 N. C., 225, for any additional burden not necessary for "railroad purposes" placed upon the land covered by the right-of-way, the owner is entitled to compensation.

What rights pass to the company in regard to disposing of surface water in the drainage of its road-bed, or what elements of damage are considered in fixing compensation when the land is condemned or surrendered by the owner by acquiescence in regard to surface water? This question was first

considered and decided by this Court in *Railroad v. Wicker*, 74 N. C., 220, in which *Rodman, J.,* adopting the rule laid down by the Supreme Court of Massachusetts, said: "A distinction is taken between cases in which the ponding is caused by the obstruction of a natural or artificial drainway, and when it is caused by the alteration of the previous grade or. slope of the land, by which the surface water on defendant's land is prevented from running off as it was accustomed to do. In the first of these cases it is held that the resulting damage should not be estimated in measuring the compensation to the land-owner; but that in the second it should be." This case has been uniformly approved and followed by this Court. The only difficulty consists in the application of the rule. In that case the question discussed was ponding surface water. In *Willey v. Railroad*, 98 N. C., 263, *Smith, C. J.,* said: "In condemnation, everything necessary and incident to the original making and subsequent operating the road must be intended to have passed as against the owner of the condemned land." In *Bell v. Railroad*, 101 N. C., 21, *Davis, J.,* says: "The water drained by the defendant's ditches was all surface water, except occasionally, after heavy rains, the water from the Dismal Swamp would spread over the surface of the ditch," citing *Wicker's case, supra,* as establishing the principle that draining off surface water was one of the legal incidental damages" which is assessed in condemnation proceedings. *Adams v. Railroad,* 110 N. C., 325; *Fleming v. Railroad, supra.* In *Mullen v. Canal Co.,* 130 N. C., 496, *Douglas, J.,* says: "In the present case the plaintiff occupies the singular position of being the upper and lower land-owner by virtue of the same piece of land." After describing the way in which the plaintiff was damaged, he says: "This is diversion, and it is now well settled that neither a corporation nor an individual can divert water from its natural course." In *Mizell v. McGowan*, 120 N. C., 134,

*Faircloth, C. J.,* said: "The defendants are permitted not to divert, but to drain their lands, having due regard to their neighbor, provided they do not more than concentrate the water and cause it to flow more rapidly and in greater volume down the natural stream through or by the lands of the plaintiff. This license must be conceded with caution and prudence." *Parker v. Railroad,* 123 N. C., 71.

We conclude, therefore, that the defendant, by entering upon and occupying plaintiff's land for railroad purposes, acquired, at the end of two years from the construction of the road, an easement permitting it to use one hundred feet from the center on either side for railroad purposes, which includes the right to construct the road-bed and to carry from it by the use of drains, carefully constructed, the surface water accumulating on the right-of-way. In exercising this right, care must be taken to avoid, by the use of all reasonable means, all unnecessary damage to the lands over which it has a right-of-way. The land-owner must have known, when he acquiesced in the acquisition of the easement by refraining from suit, that the company would be compelled to protect its road-bed and track from surface water. He knew the "lay" of his land and what effect the construction of the road would have upon the flow of the water and the means necessary to prevent ponding and injuring the upper land and the road-bed. He made no complaint for sixteen years, during which he says there was a wooden trunk carrying the surface water in the same quantity and through the same land as the pipe does. He says, and this is self-evident, that the new drain does not increase the flow of the water, and he further says that the drain is about the lowest point and is where the water would naturally flow.

The contention of the plaintiff is well stated in the brief of his counsel, saying: "Plaintiff alleges that the defendant should have carried the water, collected in its side ditches,

to the branch on the west, or the ditch on the east or trunked. it to the Yadkin River on the south, about one hundred yards distant from the railroad. And, in not doing this, the construction and drainage of the road was negligently and improperly done."

Neither of these contentions were submitted to the jury. They were instructed that if the water was concentrated by flowing down the side ditches at the trunk and permitted to go through the trunk onto plaintiff's land, defendant was liable. This view eliminated the question of negligence and withdrew from the jury the fact that defendant had acquired an easement to drain the surface water by carrying it through the road-bed, provided there was no other reasonably convenient way to dispose of it and that there was no negligence in the construction of the drain. It is not clear from the testimony of plaintiff whether defendant could not, by the exercise of reasonable care and without unreasonable expense, have carried the water to the branch and thereby disposed of it without injury to plaintiff. He says in his direct evidence that the branch was lower than the point at which the trunk was placed. In his cross-examination he says otherwise.

We think that the true test of defendant's liability is whether the means adopted were reasonable, or such as a prudent man so situated, having regard to his own and his neighbor's rights and property, would have taken to dispose of the surface water.

It may be that, if railroad companies were required to condemn or at least institute proceedings for that purpose, before constructing their roads, etc., and have their rights and duties settled, many of the difficult and perplexing questions which have arisen would have been avoided. The policy of the State, when the construction of railroads first attracted attention, was otherwise. Conditions have changed, lands have increased in value and rights deemed of little value when the

PARKS *v.* RAILROAD.

roads were built have become of importance.   The courts, while endeavoring to have the law work out substantial justice, cannot change their decisions to meet these conditions.

The defendant is entitled to drain the surface water from its road-bed, subject to the limitation that it does so without negligence and unnecessary injury to the lands of plaintiff. Of course, what we have said has no application to lands over which rights-of-way have not been acquired.   These questions have been discussed and settled in other cases.

This conclusion results in a new trial.   It may be proper to say that the real questions in controversy could be more clearly presented by a reformation of the pleadings.   It does not very clearly appear what the plaintiff's cause of action is or the damage which he claims.   The proper issues in such cases may be found in *Brown v. Power Co.* 140 N. C., 334, and *Candler v. Electric Co.,* 135 N. C., 12.   In this way the plaintiff recovers for damage up to the time of the trial, not exceeding five years, and for the permanent easement which is acquired by the payment of the judgment.   The issues thus framed would eliminate the exceptions to his Honor's rulings upon the question of damages.

New Trial.