M. W. TIGHE ET AL. v. SEABOARD AIR LINE RAILROAD COMPANY.

(Filed 16 October, 1918.)

**Railroads— Condemnation— Easements— Rights of Way— Deeds and Conveyances—Charter Width.**

A conveyance of so much of the owner's land as may be taken in making a connection with another railroad, within the city's limits, according to a certain survey, is not *ipso facto* a conveyance of the full width thereof authorized by its charter; and where a railroad company acquired by deed a less width of land as a right of way than that authorized by its charter, it can take more of the land only by condemnation and compensation, in the absence of further contract.

HOKE, J., concurring in result.

APPEAL by defendant from *Stacy, J.,* at January Term, 1918, of WAKE.

This action is to recover damages for alleged encroachment upon the property of plaintiffs in the construction of a track between Johnston Street and a point near Boylan Avenue bridge in Raleigh.

Upon the complaint, the plaintiffs moved for a restraining order against the construction of the track on their property. The motion was denied, but defendant was required to give bond in the sum of $2,500 to pay all damages and costs that might be awarded plaintiffs in this action. In the judgment overruling the motion for a restraining order the plaintiffs and the defendant waived condemnation proceedings and agreed that the issue as to title to the property in dispute should be tried, and if plaintiffs established title the issue of damages should be tried.

It appeared that one of plaintiffs' elements of damages was the alleged closing of the entrance from Dawson Street to the property of the plaintiffs, and defendant claimed that if the title to the property should be found in the plaintiffs, then the defendant by the exercise of its rights under Revisal, 2569, 2570, 2571, could condemn another entrance to plaintiffs' property and thereby greatly reduce the damages to which they would be liable. In accordance with the agreement, the question only of encroachment was considered in the trial from which this appeal is taken.

The contentions of the defendant supported by evidence are as follows:

1. Chapter 68, Laws 1899, authorized the Raleigh and Gaston Railroad Company to consolidate with other railroad companies and to lease or otherwise acquire their property.

2. Chapter 34, Laws 1899, authorized the defendant company to unite with the Richmond, Petersburg and Carolina Railroad Company.

3. Chapter 168, Private Laws 1901, chapter 1901, authorized the defendant, successor of the Richmond, Petersburg and Carolina Railroad Company, to possess and exercise the powers conferred upon the latter road, and authorized leases, purchases, sales or consolidations between it and other railroad and transportation companies.

4. By articles of agreement and merger and consolidation entered into 11 October, 1915, and filed in the office of the Secretary of State on 15 November, 1915, the Seaboard Air Line Railroad and Carolina, Atlantic and Western Railroad Company formed the Seaboard Air Line Railroad Company, and the latter became possessed of all the rights, privileges and easements formerly possessed by the Seaboard Air Line Railroad.

5. Under the statutes of this State and by the articles of consolidation and merger, the defendant claims that as successor of the Raleigh and Gaston Railroad Company it is entitled to all the rights, privileges and easements of said company, including the right of way herein set out.

6. The deed from Jepthah Horton to the Raleigh and Gaston Railroad Company 12 August, 1853, conveyed "so much of a certain tract of land lying and being in the county of Wake and bounded as follows, to wit: Beginning at S. E. corner of Mrs. Matilda Wedding's lot and running N. 16 poles to a stake, then W. 18 poles to a stake, then S. 16 poles to a stake, then E. to the beginning, containing by estimation 1 acre, 3 roods and 8 poles, as may be taken in constructing the connection between the Raleigh and Gaston and North Carolina Railroad according to survey made by Ed. Myers, civil engineer, to have and to hold to the said party of the second part (Raleigh and Gaston Railroad Company) and its assigns forever, with all and every the appurtenances thereunto belonging."

7. The charter of the Raleigh and Gaston Railroad Company fixed the right of way of said company at forty feet on each side of the center of the track, and it was authorized thereby to take a right of way of that width.

8. The deed from Jepthah Horton to the Raleigh and Gaston Railroad Company was executed and recorded prior to the deed from Jepthah Horton to John Tighe, under which the plaintiffs claim.

9. The land occupied by defendant's track in November, 1916, is a part of defendant's right of way of which it acquired by consolidation and merger with the Raleigh and Gaston Railroad Company.

10. Chapters 140 and 527, Laws 1852, incorporating the Raleigh and Gaston Railroad Company, ratified 2 December, 1852, provides: "Be it further enacted, That to enable the said Raleigh and Gaston Railroad Company to effect a junction and form an actual connection with the North Carolina Railroad Company whenever the superstructures shall have been laid on that part of the road of the North Carolina Railroad Company lying between Raleigh and Goldsboro, as provided in the fifty-second section of the act incorporating the North Carolina Railroad Company, the president and directors are hereby invested with full power and authority to make all necessary contracts for the construction of said road and to resort to the same means for purchasing or condemning such lands as may be required therefor as are provided in the act incorporating the North Carolina Railroad Company."

11. Chapter 82, Laws 1848-9, incorporating the North Carolina Railroad Company, which is referred to in the above mentioned charter of the Raleigh and Gaston Railroad Company, has this provision, among others: "The right of said company prescribed in section 27 of this act shall extend to condemning one hundred feet on the main track of the road, measuring from the center of the same, unless in the case of deep cuts and fillings, when said company shall have power to condemn

as much in addition thereto as may be necessary for the purpose of constructing said road."

12. The defendant contends that the Raleigh and Gaston Railroad Company had power under section 18, chapter 140, Laws 1852, construed in connection with section 28, chapter 82, Laws 1848-9, to take a right of way of the width of one hundred feet on each side of the track.

13. In the general statute on Railroads, Revisal, sec. 2597, it is provided that the width of land condemned for any railroad shall be not less than eighty feet or more than one hundred feet, and defendant contends that under its terms the Raleigh and Gaston Railroad Company was required to condemn a right of way not less than eighty feet in width and not more than one hundred feet in width across the land of Jepthah Horton.

14. The defendant's track, which was constructed in November, 1916, and which occupies the land claimed by the plaintiffs in their complaint, the defendant contends, was constructed entirely within the limits of the right of way acquired by the defendant in its merger and consolidation with the Raleigh and Gaston Railroad Company.

15. The defendant further contends that said track was constructed on said right of way for a necessary railroad purpose, to properly perform its public functions, to supply better facilities therefor, and in order to properly conduct its business as a common carrier of passengers and freight, and in order to supply better facilities for connection with the track of the North Carolina Railroad Company.

16. The defendant also sets up as a defense that if it has encroached upon plaintiffs' land, as alleged in the complaint, such encroachment was made more than five years before the commencement of this action and for the purpose of constructing a railroad thereon, which had been in operation more than two years since such alleged encroachment, and the defendant pleaded in bar of plaintiffs' right to recover damages for said encroachment Revisal, 394, as follows: "No suit, action, or proceeding shall be brought or maintained against any railroad company owning or operating a railroad for damages or compensation for right of way or use and occupancy of any lands by said company for use of its railroads, unless such suit, action, or proceeding shall be commenced within five years after said lands shall have been entered upon for the purpose of constructing said road, or within two years after said road shall be in operation."

The jury having responded to the issue, "Did the defendant encroach upon plaintiffs' land?" in the affirmative, the defendant appealed from the judgment entered thereon.

*Armistead Jones & Son and Robert C. Strong for plaintiffs.*
*Murray Allen for defendant.*

CLARK, C. J.   The defendant relies upon a deed from Jepthah Horton dated 12 August, 1853, conveying "so much of an acre tract of his land (describing the land) as may be taken in constructing the connection between the Raleigh and Gaston and North Carolina Railroad Company, according to the survey made by Ed. Myers, civil engineer."

The plaintiffs claim as heirs of John Tighe, to whom Jepthah Horton conveyed the balance of the land on 12 October, 1869, or about sixteen years later than the defendant's deed.   The defendant laid a single track to make this connection, and has introduced no evidence as to how much of this land was taken by the Ed. Myers survey, and relies upon the presumption that in laying this single track either the 80 feet authorized right of way under the Raleigh and Gaston Railroad Company charter or the 200 feet right of way authorized by the North Carolina Railroad Company charter would prevail..   If the former, it would include the *locus in quo;* and if the latter, it would take three-fourths of the tract conveyed to the plaintiffs' ancestor, John Tighe.

The plaintiff introduced evidence tending to show that only one-quarter of an acre was used and occupied by the railroad company under the Ed. Myers survey, and that continuously since the deed in 1869 to John Tighe, under which they claim they have occupied the *locus in quo;* that for a long time it was their home; that on the northern part of the land John Tighe had planted a hedge, and between this hedge and the railroad right of way they had a 10-foot drive on this land, leading into North Dawson Street; that two or three times, more than two years prior to the commencement of this action, the defendant had thrown cinders upon this pathway, but had desisted when forbidden to do so; that in 1916 (less than two years prior to the beginning of the action) the defendant contructed a double track, covered up the entire driveway and hedge, closing the plaintiffs' outlet to the street and making their property undesirable.   The defendant introduced no evidence on the above matters, except in confirmation of the building of the double track in 1916 and of the existence of the hedgerow, which is now covered up by the double-track embankment.

While the presumption is that Ed. Myers, the civil engineer, laid out the right of way to the full 80 or 100 feet wide, as authorized by the charter, if necessary to make the physical connection, this is subject to the evidence tending to show that only one-quarter of an acre was used and occupied by the railroad company under the Ed. Myers survey, and the jury, under the instructions of the court, free from error, so found.

In *Hendrix v. R. R.,* 162 N. C., 9, the conveyance to the railroad was of "so much of our land as may be occupied by said railroad, its banks, ditches, and works."   This deed was executed in 1862, and the grantee, prior to 1865, constructed a line of railroad through the property, taking

a strip of land 50 to 55 feet in width. The railroad company in 1909 widened its right of way and took additional land for that purpose. It was contended by the plaintiff that, under the language of the deed, the defendant was restricted to the right of way originally occupied. But this Court held that, under such deed, the railroad company could take the necessary land to the extent of the right of way prescribed by the charter.

So, also, in *R. R. v. Bunting,* 168 N. C., 579, the Court held that a railroad company may occupy its right of way to its full extent whenever the proper management and business necessities of the road, in its own judgment, may require it, though the owner of the land can use and occupy a part of the right of way not used by the railroad in a manner not inconsistent with its full enjoyment of the easement.

Indeed, our decisions are uniform that when a railroad company has acquired the right of way by condemnation or by purchase of the right of way, the deed not limiting the conveyance to less than the statutory width (as in *Hendrix v. R. R., supra*), or has entered upon the land and acquired it without condemnation and without conveyance, by reason of the acquiescence of the owner for the statutory time—in all these cases, while the railroad can use only the part actually occupied (the adjacent proprietor using the rest of the right of way *sub 'modo,* that is, subject to the easement of the railroad), still in all these cases, whenever the necessities of the company require it, it can extend its user of the right of way to the extent of the statutory right for additional tracks or other railroad purposes. This matter has been fully discussed and uniformly decided in many cases. *R. R. v. Olive,* 142 N. C., 264, and the large number of cases there cited, among others, especially *R. R. v. Sturgeon,* 120 N. C., 225; *R. R. v. McCaskill,* 94 N. C., 746; *Barker v. R. R.,* 137 N. C., 214, and the citations to *R. R. v. Olive* in the Anno. Ed. Also, in the cases cited by *Hoke, J.,* in *R. R. v. Bunting,* 168 N. C., 580.

The present case, however, is distinguished from the above, for here the defendant railroad did not acquire the right of way either by condemnation or by occupation, without objection, for the statutory time, nor by a deed for the "right of way," all of which would be presumed to give an easement to the full width of the right of way allowed by the charter or the general law; but the defendant railroad was content to accept a deed specifying as the boundary "according to the survey made by Ed. Myers, civil engineer," and the jury find that this did not embrace the *locus in quo.* The defendant therefore is restricted to the boundary described in its deed. It can now occupy land beyond that limitation by the exercise of the statutory authority of condemnation with compensation, but not otherwise.

No error.