E. C. GRIFFITH v. SOUTHERN RAILWAY COMPANY.

(Filed 27 January, 1926.)

1. **Railroads — Rights of Way — Easements—Actual Occupation—Width of Right of Way.**

A railroad company acquires by condemnation a right of way over the lands of the owner, within the limits of its charter or other pertinent statutes, when not otherwise specified extending to that portion not actually occupied by its roadbed.

2. **Same—Acquisition—Statutes.**

A railroad company ordinarily may acquire a right of way over or an easement in the lands of the owner for the purposes of its railroad, by purchase or grant, condemnation, or statutory presumption.

3. **Same—Width of Right of Way—Statutes—Presumptions.**

Where the charter of a railroad company prescribes the maximum or minimum width of the right of way that the company may acquire over the lands of the owner, it confines such acquisition strictly to the width prescribed; and if no width is prescribed therein, then that prescribed by C. S., 1733(1), applies, subject to the right of the owner for compensation. C. S., 440 (1), (2).

4. **Railroads—Rights of Way — Easements — Statutes—Strict Construction.**

Statutes giving railroad companies the right to condemn lands of the owner for railroad purposes, will be strictly. construed, and the rights will not be extended beyond those expressly granted or arising by necessary implication.

5. **Same—Statutes—Presumptions.**

Where the Legislature of this State confers upon a railroad corporation of another state the same right to acquire land herein as given by its act of incorporation in another state, there can be no presumption, under our statutes, as to the width of the right of way acquired here, when the method of its acquisition, under its charter, has not been followed here.

CLARKSON, J., took no part in the consideration or decision of this case.

CIVIL ACTION to remove a cloud from title, tried before *Webb, J.,* at October Term, 1925, of MECKLENBURG.

From judgment in favor of plaintiff, defendant appealed. Affirmed.

The facts essential to the determination of the controversy are substantially as follows:

Plaintiff is the owner in fee simple and in possession of a certain lot of land in the city of Charlotte under mesne conveyances and canons of descent from one William Elms who was the owner thereof on 1 January, 1852. Plaintiff's land has been within the corporate limits of the city of Charlotte since 1852. On 26 February, 1852, the General

Assembly of the State of Tennessee incorporated the Atlantic, Tennessee & Ohio Railroad Company referred to in the record as the A. T. & O. R. R. Company. Section 8 of said Tennessee charter provides "that said Atlantic, Tennessee & Ohio Railroad should have perpetual succession of members, sue and be sued, plead and be impleaded in any court of law or equity in the states of Kentucky, Virginia, Tennessee and North Carolina, and make all such regulations, rules and by-laws as are necessary for the government of the corporation or affecting the objects for which it was created; provided such rules and by-laws shall not be repugnant to the laws or Constitution of said states or of the United States.

Section 14 thereof provides "that the board of directors shall have power to construct as speedily as their means will permit a railroad with one or more tracks to be used with steam, animal or other power between Charlotte, North Carolina, and some point on the East Tennessee and Virginia Railroad."

Section 28 provides "that the said company may purchase, have and hold in fee or for a term of years any lands, tenements or hereditaments which may be necessary for the said road."

Section 31 provides in substance that the president and directors of said company or their authorized agents may agree with the owner of any land, earth, timber or stone, or any other materials or improvements which may be wanted for the construction or repair of any of said road or any of their works, and if such authorities could not agree with the owner of such land or material wanted, application may be made to any justice of the peace, who shall issue a warrant requiring the sheriff to summon a jury of five freeholders to meet on the land or property to be valued, and after administering an oath to such jurors, the said jurors shall assess the damages, reducing their verdict to writing and signing the same, which award shall be filed in the office of the clerk, and upon payment of said award the company was authorized to enter upon the premises described in the award. The said jury of inquisition was further required to describe the property taken or the bounds of land condemned and the duration of interest in the same.

The General Assembly of North Carolina at its regular session 1854-1855, enacted chapter 227, Public Laws 1854-55. Section 1 of said chapter 227 provides "that the said Atlantic, Tennessee & Ohio Railroad shall be a body corporate in this State, and with the powers and privileges in said act of incorporation granted shall also have power to extend their railroad to some point on the North Carolina Western Railroad or to some point on the North Carolina Railroad."

Section 4 of said chapter 227 is as follows: "Be it further enacted, that the said company shall have the same power of surveying, locating

and condemning property *that is allowed in the State of Tennessee;* also all the powers and privileges in constructing, equipping and running their said road, that is by the said act granted to them in the said State of Tennessee."

Thereafter and in pursuance of said act the A. T. &. O. Railroad Company constructed its railroad in the city of Charlotte about the year 1859 or 1860, locating its track either upon or near the land of the plaintiff. The defendant, Southern Railway Company, is the successor in title of the said A. T. & O. Railroad Company and is now the owner of all the right, title and interest formerly owned by the said A. T. &. O. Railroad Company in and to said line of railway and its appurtenances, and is now engaged in operating the same. The defendant as such successor in title claims a right of way or easement over all of the land of the plaintiff described in the complaint, lying within a distance of fifty feet from the right angle of the A. T. & O. Railroad Company.

The case was heard upon the complaint, answer, demurrer to answer, stipulations and exhibits, and judgment rendered decreeing that the plaintiff was the owner of the land in fee, free and clear of any right of way, easements, privileges or other estate or interest of defendant, and that the defendant has no claim, easement, right of way or other interest in, over and upon the land of the plaintiff.

*Taliaferro & Clarkson for plaintiff.*
*Manly, Hendren & Womble for defendant.*

BROGDEN, J. The question for decision is whether or not the defendant has an easement in and to the land of the plaintiff by reason of the construction of a line of railroad over or abutting the land of the plaintiff by the A. T. & O. Railroad, the defendant's predecessor in title. The defendant contends that it has such an easement. The plaintiff, upon the other hand, contends that defendant's claim constitutes a cloud upon his title and brings this action to remove the cloud.

If there be a cloud upon plaintiff's title, it arises from one or all of three sources, to wit:

(1) Entry by defendant's predecessor in title upon or abutting the lands of plaintiff and the construction of a line of railroad thereon, the entry having been made and the road completed in 1859 or 1860.

(2) C. S., section 1733, subsection 1, as follows, to wit: Right of way of railroad: The width of land condemned for any railroad shall not be less than 80 feet nor more than 100, except where the road may run through a town, when it may be of less width; or where there may be deep cuts or high embankments, when it may be a greater width.

(3) C. S., 440, subsection 1, as follows, to wit: No suit, action or proceeding shall be brought or maintained against the railroad company

owning or operating a railroad for damages or compensation for right of way or use and occupancy of any lands by the company for use of its railroad unless the action or proceeding is commenced within five years after the lands have been entered upon for the purpose of constructing the road, or within two years after it is in operation.

So that the defendant asserts that entry and construction of the railroad coupled with the provision of C. S., 1733, *supra,* raises a presumption that defendant has an easement in, and over that portion of plaintiff's land within fifty feet from the right angle of the track of the A. T. & O. Railroad Company.

It is universally held in this jurisdiction that a railroad corporation acquires by condemnation an easement over that portion of its right of way not actually occupied by its roadbed, tracks, drains and side-ditches: *Ward v. R. R.,* 109 N. C., 358; *Blue v. R. R.,* 117 N. C., 644; *R. R. v. Sturgeon,* 120 N. C., 225; *Neal v. R. R.,* 128 N. C., 143; *Shields v. R. R.* 129 N. C., 1; *McCullock v. R. R.,* 146 N. C., 316; *R. R. v. McLean,* 158 N. C., 498; *Hendrix v. R. R.,* 162 N. C., 9; *R. R. v. Bunting,* 168 N. C., 579; *Tighe v. R. R.,* 176 N. C., 239.

This easement or right of way under our law can be acquired by three methods, to wit:

(1) Purchase or grant; (2) Condemnation; (3) Statutory presumption. *Barker v. R. R.,* 137 N. C., 214.

It is conceded that the defendant did not acquire an easement in plaintiff's land by virtue of purchase, grant or condemnation, and that plaintiff has received no compensation for his property claimed in this action. Therefore, the doctrine of statutory presumption is the sole basis of defendant's claim.

There are many cases in this jurisdiction dealing with various aspects of controversies arising between citizens of the State and railroad companies in reference to the extent of the easements acquired in and to private property by virtue of provisions in charters, deeds and grants, or by reason of the application of C. S., 1733 and C. S., 440, *supra. R. R. v. McCaskill,* 94 N. C., 746; *Land v. R. R.,* 107 N. C., 72; *Liverman v. R. R.,* 109 N. C., 52; *Utley v. R. R.,* 119 N. C., 720; *Narron v. R. R.,* 122 N. C., 856; *R. R. v. Olive,* 142 N. C., 257; *Parks v. R. R.,* 143 N. C., 289; *Earnhardt v. R. R.,* 157 N. C., 358; *Abernethy v. R. R.,* 159 N. C., 341; *Caveness v. R. R.,* 172 N. C., 305; *R. R. v. Nichols,* 187 N. C., 153; *Young v. R. R.,* 189 N. C., 238.

The general principles established by the decisions are in substance:

(1) That if a method of acquiring property for a right of way is prescribed in the railroad charter that method is exclusive and must be strictly construed and strictly followed.

(2) That if the charter prescribes no maximum or minimum width of the right of way, then C. S., 1733, subsection 1, applies, and the law presumes the width therein specified subject to the right of the owner to recover compensation by compliance with C. S., 440, subsections 1 and 2.

This case stands upon a different footing.

The A. T. & O. Railroad Company, defendant's predecessor in title, was created by act of the General Assembly of Tennessee on 26 February, 1852. It was, therefore, a foreign corporation.

The General Assembly of North Carolina, Session 1854-1855, chapter 227, reënacted the Tennessee charter. The pertinent provisions of the North Carolina Act are as follows:

Section 1. That the said Atlantic, Tennessee & Ohio Railroad Company shall be a body corporate in this State, and with the powers and privileges in said act of incorporation granted shall have power to extend their railroad to some point on the North Carolina Western Railroad, etc.

Section 4. Be it further enacted, that the said company shall have the *same power* of surveying, locating and *condemning property that is allowed in the State of Tennessee;* also all the powers and privileges in constructing, equipping and running their said road that is by the said act granted to them in the State of Tennessee.

Obviously, it was the plain intention of the General Assembly of North Carolina to grant to this foreign corporation only such powers as were delegated to it by the State of Tennessee.

What powers, therefore, were delegated by the Tennessee statute? Substantially the following:

(1) To construct as speedily as their means will permit a railroad with one or more tracks.

(2) To purchase, have and hold in fee or for a term of years any lands, tenements or hereditaments which may be necessary for the said road, etc.

(3) To take possession of land or material *"where such land or material may be wanted"* after the same has been duly appraised in accordance with the method set out in the said section 31, subject, however, to the payment of whatever damages might be awarded by the jury of inquisition or by the court if an appeal was taken, it being further provided that the "jury of inquisition should describe the property taken or the bounds of the land condemned and the duration of interest in the same."

It is apparent from an examination of the statutes involved that no maximum or minimum right of way was provided by the law of Tennes-

see, and the A. T. & O. Railroad Company could only take *"such land as may be wanted"* by the method prescribed in section 31 of its charter.

The Legislature of North Carolina expressly withheld from the A. T. & O. Railroad Company the power of eminent domain except as granted by the law of Tennessee, and the law of that state specified no maximum or minimum width of right of way.

Eminent domain means the right of the state or of the person acting for the state to use, alienate or destroy property of a citizen for the ends of public utility or necessity. *Wissler v. Power Co.,* 158 N. C., 465.

This power is one of the highest attributes of sovereignty, and the extent of its exercise is limited to the express terms or necessary implication of the statute delegating the power.

The rule is stated thus in *R. R. v. Lumber Co.,* 132 N. C., 652; "In construing statutes which are claimed to authorize the exercise of the power of eminent domain, a strict rather than a liberal construction is the rule. Such statutes assume to call into active operation a power, which however essential to the existence of the government, is in derogation of the ordinary rights of private ownership and of the control which the owner usually has of his property. The rule of strict construction of condemnation statutes is expressly applicable to delegations of power by the Legislature to private corporation." *R. R. v. R. R.,* 148 N. C., 63; *Comrs. v. Bonner,* 153 N. C., 66; *Lloyd v. Venable,* 168 N. C., 532.

The defendant relies upon the case of *Tighe v. R. R.,* 176 N. C., p. 244. In that case the Raleigh & Gaston R. R. Company was operating under a charter prescribing the width of a right of way and authorizing the railroad company to take a right of way of that width. A deed had been executed and delivered to the company "for so much of a certain tract . . . as may be taken in constructing the connection between the Raleigh & Gaston and North Carolina Railroad according to the survey made by Ed Myers."

The Court properly held that a deed or grant for an indefinite quantity of land for purposes of a right of way amounted to a conveyance of the full width authorized by the charter or the general law.

The Legislature of North Carolina expressly granted to the A. T. & O. R. R. Co. only such powers as were conferred by the law of Tennessee. This fact, in itself, under the general rules of statutory construction excludes the application of the general law of North Carolina. The principle is summarized in the well known maxim *"expressio unius est exclusio alterius." Latta v. Williams,* 87 N. C., 129.

For this reason the principles announced in the *Tighe case* do not apply.

We are therefore of the opinion and so hold upon the record presented that there is no statute or statutory presumption creating an easement in plaintiff's land in favor of the defendant and hence that the defendant has no valid claim to any part of plaintiff's land described in the complaint.

Affirmed.

CLARKSON, J., took no part in the consideration or decision of this case.