CAROLINA AND NORTHWESTERN RAILWAY COMPANY v. PIEDMONT WAGON AND MANUFACTURING COMPANY.

(Filed 7 January, 1949.)

**1. Eminent Domain § 20½ —**

Where a railroad company which is given the right of eminent domain by its charter constructs its road with the acquiescence of the owner on land to which it has not acquired title by condemnation or conveyance, it acquires a right of way by implied grant or statutory presumption, with right in the owner to maintain an action for compensation.

**2. Same: Eminent Domain § 21a—**

Where a railroad company has taken a right of way by implied grant, the owner's action for compensation must be instituted prior to the ripening of title in the railroad company by adverse possession or prior to the bar of any applicable charter or statutory limitation.

**3. Eminent Domain §§ 20½, 26—**

Where a railroad company having the power of eminent domain builds its road over lands to which it has not acquired title by conveyance or condemnation, and no action for compensation is instituted by the owner within the time limited, it acquires the right of way by implied grant to the full width which it might have taken by condemnation, if not under express charter provision, then under the general law.

**4. Easements § 5—**

Where a railroad company acquires a right of way either by condemnation or operation of law, the fee remains in the original owner and he may use the land for any purpose not inconsistent with the easement and to the extent that the land is not actually used for railroad purposes, subject to the right of the railroad company to extend its use of the right of way to the full width whenever in its judgment its business necessitates.

R. R. v. Manufacturing Co.

**5. Same—**

A railroad company, after having acquired a right of way by operation of law, sought to extend its use of the right of way by constructing side-tracks on a portion of the right of way occupied by the owner of the fee. *Held:* The railroad company is the sole judge of the necessity for such expansion and it may enjoin any interference therewith by the owner of the fee irrespective of any alleged arbitrariness or unreasonableness on its part in giving notice of its intention to extend its facilities.

Ervin, J., took no part in the consideration or decision of this case.

Appeal by plaintiff from *Warlick, J.,* in Chambers at Newton, 25 June, 1948—from Catawba.

Civil action for mandatory injunction to require defendant to remove fence and other obstructions from plaintiff's right of way in the City of Hickory.

On the hearing, plaintiff sought to show the following facts:

1. That by Act of Assembly, Chap. 190, Private Laws 1895, the plaintiff was duly incorporated in this State and granted the right to construct, maintain and operate a railroad from a point on the South Carolina line in Gaston County to a point on the Tennessee line in Watauga County, with authority to acquire any railroad along any part of the route by purchase or consolidation, and with authority to acquire by condemnation or otherwise, rights of way "as is given to any other railway company in this State." (Sec. 10.)

2. By deed bearing date 30 January, 1897, the plaintiff acquired from the Chester & Lenoir Narrow Gauge Railroad Company the line of railroad extending from Chester, S. C., to Lenoir, N. C., including all rights of way, property rights, powers and interest of every kind and nature thereto belonging or in any wise appertaining.

3. The Chester & Lenoir Narrow Gauge Railroad Company, chartered by Act of Assembly, Chap. 25, Public Acts, 1872-73, was a consolidation of the Carolina Narrow Gauge Railroad Company and the Chester & Lenoir Narrow Gauge Railroad Company of South Carolina, the consolidated company being given "all the rights, powers, privileges, immunities and franchises conferred upon the Carolina Narrow Gauge Railroad Company."

The first of these consolidated companies constructed that part of the railroad south of Hickory, and the consolidated corporation completed the line from Hickory to Lenoir in 1884. The charter of the Carolina Narrow Gauge Railroad Company, Chap. 130, Public Acts, 1871-72, provided that "whenever lands shall be required for the construction of the road . . . and for any cause the same cannot be purchased from the owner, the same may be taken at a valuation" to be fixed by five disinterested freeholders of the county, etc., after deducting the enhanced value

and adding any particular loss, "and upon the payment or tender . . . of the amount so assessed, the title to the property so seized and appraised shall thereby vest in the said corporation . . .; And provided further, that not more than one hundred feet from the center of the road shall be allowable to be so condemned." (Sec. 7.)

4. In 1947, the plaintiff found need for additional facilities or side-tracks on the west side of its main line between the right of way of the Southern Railway Company and Twelfth Avenue in the City of Hickory. To construct these will require laying the facilities over a parcel of land within 50 feet of the center line of plaintiff's track, but presently occupied by the defendant and to which the defendant holds the underlying title in fee, deed thereto having been acquired by defendant or its predecessor in title in 1882.

Due notice was given to the defendant of plaintiff's intention, which met with objection and physical resistance. Whereupon this action was instituted for injunctive relief.

On the hearing, it was conceded that plaintiff's predecessor in title entered upon the right of way at the point in question and constructed its railroad without any condemnation of the right of way or agreement with the owner of the land as to its value, or payment or tender of its appraised worth.

It was also conceded that the actual use of the land at the point in question, by the plaintiff and its predecessors, extended no farther than the ditch banks beside the main line track. The defendant admits in its answer and says in its brief that it "has never denied the plaintiff's right of way over the land occupied and used by the road," *i.e.*, the roadbed, main line track, drains and side ditches.

Plaintiff further conceded that, for the purposes of this suit, the authority of its predecessor was to acquire a right of way of not more than 100 feet in width.

It was admitted that the defendant or its predecessors in title had occupied and used continuously and without interference the tract of land west of the western edge of the western ditch bank to a point 50 feet from the center of defendant's line of track. This is the *locus in quo*.

From judgment denying the plaintiff's prayer for injunctive relief, and removing plaintiff's claim as a cloud on defendant's title, in accordance with the latter's prayer, the plaintiff appeals, assigning errors.

*J. C. Rudisill, J. W. Aiken, and W. T. Joyner for plaintiff, appellant.*
*Eddy S. Merritt and T. F. Cummings for defendant, appellee.*

Stacy, C. J., after stating the facts as above: The case turns on the width or extent of plaintiff's right of way at the location in question.

The plaintiff says its easement extends a distance of 50 feet on either side of the center line of its roadbed or main line track. The defendant says the right of way extends no farther than the outer banks of the side ditches along the main line track, *i.e.*, only to the extent of the land actually "required for the construction of the road."

It is conceded that plaintiff's predecessor, Chester & Lenoir Narrow Gauge Railroad Company, constructed the railroad at the point in question, without obtaining deed for the right of way or paying the assessed or appraised value of the land taken for the purpose, and that no application has ever been made by the owner or owners for the assessment of its value or to recover compensation therefor.

The question then arises: What did the railroad company acquire under these circumstances?

Manifestly the entry and taking of the right of way at the point in question by the Chester & Lenoir Narrow Gauge Railroad Company in 1884 was under and by virtue of its charter. Hence, the action of the company was not that of a trespasser, but rather the act of one clothed with authority. The company was not obliged to know that compensation would be demanded but could assume from the owner's silence that he regarded the enhanced value of his land, caused by the construction of the railroad, fully the equivalent of any loss he might have sustained. *McIntyre v. R. R.,* 67 N. C. 278.

The thesis is stated in 23 A. & E. Enc. of Law (2d Ed.), at page 700, as follows: "The accepted doctrine, in most jurisdictions, now is that where a railroad company proceeds to build its road upon land to which it has not acquired title by condemnation or conveyance, the owner may have his action for damages or for the value of the land, or may maintain ejectment or other possessory action, or may enjoin the company from appropriating or using such land, provided he proceeds with reasonable promptitude; but that if the owner stands by and acquiesces, until the company has expended its money and constructed its road across his land, and until the road at that point has become a part of its railroad line, whereby the public, as well as the company, has acquired an interest in the maintenance of the enterprise, he forfeits every remedy except that of an action for compensation or damages. In such a case the railroad company is said to acquire its right of way by implied grant."

The principle announced in the above quotation finds support in our own decisions and is generally referred to as the doctrine of statutory presumption. It is usually, but not always, set out in the charter *in extenso. So. Ry. Co. v. Lissenbee,* 219 N. C. 318, 13 S. E. (2) 561; *Dowling v. R. R.,* 194 N. C. 488, 140 S. E. 213; *Griffith v. R. R.,* 191 N. C. 84, 131 S. E. 413; *Tighe v. R. R.,* 176 N. C. 239, 97 S. E. 164; *Barker v. R. R.,* 137 N. C. 214, 49 S. E. 115; *Dargan v. R. R.,* 131 N. C. 623, 42 S. E. 979.

Obviously the railroad company acquired a right of way at the location in question. This is conceded. Leastwise it is not controverted. What was its width? The charter authorized a taking of not more than one hundred feet from the center of the track. The general law then in force, Sec. 1707 of the Code (1883), declared that "The width of the land condemned for any railroad shall not be less than eighty feet nor more than one hundred, except where the road may run through a town, when it may be of less width; or where there may be deep cuts or high embankments, when it may be of greater width." In the absence of any provision in the charter limiting the owner's right to recover compensation for the lands taken, the same may not have been extinguished at that early period in the law until plaintiff's title had ripened by adverse possession for twenty years. *Land v. R. R.,* 107 N. C. 72, 12 S. E. 125; *Narron v. R. R.,* 122 N. C. 856, 29 S. E. 356, 20 L. R. A. 415. Later the General Assembly enacted Chap. 152, Public Laws 1893, now G.S. 1-51, making uniform the periods of limitation respecting actions against railroad companies for damages or compensation for lands taken for rights of way or use and occupancy.

It follows, therefore, that if a condemnation proceeding had been instituted in 1884, or the owner or owners had sought compensation by appropriate action, the maximum recovery in either case would have been the value of a right of way of one hundred feet.

It is generally held that where a common carrier by railroad, under provision of its charter, enters upon land and builds a railroad, without grant or condemnation of the right of way, and no action or proceeding is commenced by the landowner within the statutory period for recovering compensation, a presumption of a grant or conveyance arises from the concurrence of these circumstances, and this presumption extends to the limits which the railroad company might have taken by condemnation and for which the landowner could have recovered compensation had he brought his action within the prescribed period of time. *Earnhardt v. R. R.,* 157 N. C. 358, 72 S. E. 1062. In such circumstances the railroad is said to acquire its right of way by implied grant or by operation of law. *R. R. v. McCaskill,* 94 N. C. 746; *R. R. v. Sturgeon,* 120 N. C. 225, 26 S. E. 779; *R. R. v. Olive,* 142 N. C. 257, 55 S. E. 263, and cases there analyzed and reviewed.

True it is, that in most of the charters the rights of the parties are spelled out in detail, as will appear by reference to the charter provisions set out in many of the cases, notably the *McCaskill* and *Lissenbee cases*— to mention only one of the first and one of the last cases on the subject— nevertheless the general law on the subject may be called in aid of a charter which is not so specific in its terms; provided the entry and appropriation of the right of way is authorized, therefore lawful, and is

not the result of a trespass. *Holloway v. Railroad,* 85 N. C. 452; *Vinson v. R. R.,* 74 N. C. 510; *Liverman v. R. R.,* 109 N. C. 52, 13 S. E. 734; *S. c.,* 114 N. C. 692, 19 S. E. 64; *Parks v. R. R.,* 143 N. C. 289, 55 S. E. 701; *Tighe v. R. R., supra.*

Speaking to the matter in *Earnhardt's case,* it was said: "The effect of inaction on the part of the owner for a period of two years after the completion of the road has been considered in several cases in this Court, under charters similar to the one before us, and without difference of opinion, it has been held that under such circumstances, a presumption of a grant from the owner arises for the land on which the road is located and for the right of way provided for in the charter." Then quoting from *McCaskill's case:* " 'The presumption of the conveyance arises from the company's act in taking possession and building the railway, when in the absence of a contract the owner fails to take steps, for two years after it has been completed, for recovering compensation.' "

Here, it appears that, by charter provision and the general law, the plaintiff's predecessor was authorized to take, and we apprehend did acquire by implied grant, a right of way of 100 feet, or 50 feet on either side of the center line of its roadbed or main line track. *Beattie v. R. R.,* 108 N. C. 425, 12 S. E. 913. At least, such is the reasonable conclusion to be drawn from the evidence offered on the hearing and the law applicable thereto. G.S. 40-29; *Griffith v. R. R., supra.*

The showing is:

1. That plaintiff's predecessor did not acquire its right of way either by purchase or by condemnation. However, it further appears:

2. That the original entry and appropriation of a right of way of 100 feet in width at the point in question and the actual construction of the railroad were all by authority of charter provision and the general law.

3. That suit for compensation was the only remedy available to the landowner at the time, which under the law then in force, was not extinguished until the company's title had ripened by adverse possession.

4. That no such action was instituted by the owner or owners of the *locus in quo* within the time specified.

5. That a presumption of a grant from the owner or owners to the railroad company for the easement in question thereupon arose by operation of law.

6. That this right was acquired by the Chester & Lenoir Narrow Gauge Railroad Company and conveyed to the plaintiff on 30 January, 1897, along with the entire railroad, including all rights of way, property rights, powers and interests of every kind and description thereto belonging or in any wise appertaining. If the right were not complete at the time of the conveyance, it later became so.

Thus, under the applicable statutory provisions and the pertinent decisions on the subject, it would seem that the plaintiff has made out a case for injunctive relief.  *R. R. v. Lissenbee, supra; R. R. v. Olive, supra.*

Needless to add that, under the general law, and ordinarily under special charter provisions, when a right of way is acquired by condemnation, or by operation of law, only an easement passes to the railroad company, and to the extent that the right of way is not presently needed for railroad purposes, it may be occupied and used by the original owner in any manner not inconsistent with the easement acquired.  *Lumber Co. v. Hines Bros.,* 126 N. C. 254, 35 S. E. 458.  This occupancy and use by the owner, however, is subject to the right of the railroad company to extend its use of the right of way to its full extent, whenever the proper management and business necessities of the road may require it, and the company is made the judge of such necessity.  *R. R. v. McLean,* 158 N. C. 498, 74 S. E. 461.  Hence, the allegation of arbitrariness or unreasonableness on the part of the plaintiff in giving notice of its present intention to extend its facilities over the *locus in quo,* raises no issuable fact.  Whether the plaintiff now has need to extend its user of the right of way for legitimate purposes is a matter resting in its sound business judgment.  *R. R. v. Lissenbee, supra; R. R. v. Olive, supra; A. C. L. R. R. v. Bunting,* 168 N. C. 579, 84 S. E. 1009; *Tighe v. R. R.,* 176 N. C. 239, 97 S. E. 164.

Both sides have stated their respective positions with confidence and manifest research.  Elaborate and exhaustive briefs have been filed, but in the end the case comes to a narrow compass.  It would be a work of supererogation to consider and distinguish all the authorities appearing on brief, albeit none have been overlooked since the considerations are important and the parties are greatly interested in the result.

Error and remanded.

ERVIN, J., took no part in the consideration or decision of this case.